CAGUAS BUS LINE, INC., demandante y apelante, *v.* FERNANDO SIERRA BERDECÍA, COMISIONADO DEL TRABAJO DE PUERTO RICO, ET AL., demandados y apelados.

Núm. 10488—*Sometido:* Junio 5, 1952.   *Resuelto:* Septiembre 17, 1952.

744

*H. Ramos Mimoso,* abogado de la apelante; *Joaquín Gallart Mendía,* abogado del Departamento del Trabajo y a su vez de los apelados; *Lino J. Saldaña,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La presente es una solicitud de sentencia declaratoria instada por la Caguas Bus Line, Inc., contra el Comisionado del Trabajo, contra un supervisor del Departamento del Trabajo y contra siete empleados de la peticionaria que trabajaban como inspectores de salida (*starters*) en la línea de guaguas que opera aquélla entre Caguas y Río Piedras y entre Caguas y Humacao. La peticionaria ha apelado de la sentencia de la corte de distrito y señala cuatro errores.

El primero es que la corte inferior erró al resolver que los inspectores de salida son obreros semidiestros en vez de no-diestros, a tenor con el Decreto Mandatorio núm. 12

de la Junta de Salario Mínimo para la Industria de Transportación. Originalmente el decreto, que empezó a regir el 2 de enero de 1947, sencillamente clasificaba a los empleados en la industria de transportación como diestros, semidiestros y no diestros. Luego la Junta enmendó el decretó, para ser efectiva la enmienda el 1ro. de febrero de 1948. En el decreto enmendado los términos en cuestión fueron definidos por primera vez como sigue:

"C—*Trabajador diestro* se considerará todo obrero que tenga un pleno conocimiento, comprensión y dominio de la técnica manual y de los procesos envueltos en el desempeño de cualquiera de las ocupaciones generalmente reconocidas como oficios, tales como, sin que se entienda que están limitados a los siguientes: mecánicos, electricistas, carpinteros, talabarteros, herreros, pintores, hojalateros, soldadadores, plomeros, torneros y ebanistas. Debe tener habilidad para desempeñar las labores que le asignen dentro de su oficio, con criterio independiente y sin necesidad de que se le instruya en detalle cómo debe hacer el trabajo, bastando con indicarle la clase de trabajo que se desea realizar. Debe haber adquirido experiencia previa en las labores que desempeñe.

"D—*Trabajador semidiestro se considerará todo obrero que,* sin tener el grado de conocimiento, comprensión y dominio de la técnica manual y de los procesos que se requieren del trabajador diestro para el desempeño de su oficio, *posee sin embargo aquellos conocimientos que le permitan ejecutar bajo supervisión ciertos trabajos dentro de su oficio.* Estarán comprendidos en esta categoría, sin que se entienda como limitación, los auxiliares de los oficios enumerados en la definición de trabajador diestro, los engrasadores y los montadores de gomas (gomeros).

"E—*Trabajador no diestro se considerará todo obrero que desempeñe labores cuya ejecución no requiera un previo período de adiestramiento.* Estarán comprendidos en esta categoría, sin que se entienda como limitación, los siguientes: peones o trabajadores corrientes, cobradores, lavadores, despachadores (de aceite, aire, agua y gasolina), serenos, mensajeros y conserjes." (Bastardillas nuestras.)

A base de la evidencia presentádale, la corte de distrito llegó a las siguientes conclusiones de hecho en cuanto a la

naturaleza de los deberes de los inspectores de salida que trabajaban para la apelante:

"(a) Anotar las horas de salida y llegada de los omnibuses;

"(b) Contar el pasaje, cotejar el número de pasajeros y cerciorarse de que el chófer marque el número correcto en la caja de registro;

"(c) Llevar un récord de dichas operaciones, haciendo constar el número de omnibuses y el de cada viaje, así como el número de pasajeros a la llegada y salida, con la especificación de la hora de ambas;

"(d) Desempeñar funciones de supervisión, aunque limitadas, sobre los chóferes, debiendo informar a la empresa cualquier irregularidad de éstos;

"(e) Son los que indican al chófer el momento de partida de cada autobús, ejerciendo en esta forma poderes discrecionales y ejecutivos."

La apelante admite que estas conclusiones de la corte de distrito están justificadas por la evidencia, con la excepción de la marcada con la letra (e). Hemos examinado los autos y somos de opinión que los mismos contienen suficiente evidencia en qué basar la conclusión de hecho marcada (e). A base de estas conclusiones, convenimos con la conclusión de derecho de la corte inferior al efecto de que, tanto bajo el decreto original como bajo el enmendado, los obreros aquí envueltos estaban debidamente clasificados como semidiestros en la decisión administrativa informal del Departamento del Trabajo que dió margen a este caso.

El argumento de la apelante en sustancia es que el trabajo de los cobradores de sus guaguas requiere más destreza y conocimiento que el trabajo de los inspectores de salida; los cobradores están clasificados bajo el decreto enmendado como no-diestros; *a fortiori*, los inspectores de salida debieran ser clasificados como no-diestros. No estamos conformes. Los deberes asignados a los cobradores y la categoría en la cual ellos caen bajo el decreto enmendado en virtud de sus deberes, representa un problema que ahora no está ante nos. Sólo resolvemos que los deberes de los inspectores de salida

de esta empresa, según los determinó la corte inferior, justifican su clasificación como empleados semidiestros.

Los apelados admiten, y estamos conformes con ello, que hubiera sido más conveniente incluir específicamente entre las ocupaciones clasificadas como semidiestras, la de inspector de salida.    Pero la propia definición claramente indica que las ocupaciones mencionadas son ilustrativas y no están todas incluídas.    El no haber incluído la de inspector de salida en ninguna de las tres categorías, hace necesario que determinemos a qué grupo pertenece.    Y como ya hemos visto, creemos que el Departamento del Trabajo y la corte inferior llegaron a la conclusión correcta al caracterizar a los inspectores de salida como obreros semidiestros, de acuerdo con los hechos de este caso.

■■ El segundo error señalado es que si los inspectores de salida son considerados como obreros semidiestros, la decisión en este caso debe ser prospectiva y no retroactiva a la fecha del decreto original.    No vemos en qué forma podemos llegar a esa conclusión.    La apelante corrió el riesgo de pagar de menos a sus inspectores de salida cuando les pagaba a razón de treinta centavos la hora, según lo preceptuado en el decreto original y en el enmendado para los obreros no diestros, en vez de pagarles cuarenta centavos la hora, que era el tipo para los semidiestros.    Resolver que debe pagarse a los inspectores de salida como obreros semidiestros solamente desde la fecha en que la corte así lo decide, no solamente es contrario a la Ley de Salario Mínimo, bajo la cual se proveen las fechas en que comenzarán a regir los decretos, si que también proporcionaría un fácil método a los patronos de posponer durante un período considerable sus obligaciones bajo la Ley.

Al argumentar este error, la apelante admite que de ordinario un convenio entre el patrono y sus empleados por paga menor que la provista por ley, queda suplantado por el estatuto en cuestión. *Sierra, Comisionado* v. *San Miguel*, 70 D.P.R. 604.    Pero alega que este caso es distinguible con mo-

tivo de la alegada incertidumbre en relación con la clasificación de inspectores de salida. Aparte del hecho de que los autos no contienen evidencia de la existencia de ningún convenio de esta naturaleza entre el patrono y sus empleados, no podemos hallar distinción alguna entre las dos clases de casos. Cuando se expidió el decreto original, la apelante sostenía que sus inspectores de salida eran no-diestros. Luego de aprobarse el decreto enmendado con sus definiciones de las tres categorías, persistió la apelante en su actitud. Una vez que la controversia queda resuelta por los tribunales, el decreto debe aplicarse obviamente desde la fecha en que originalmente empezó a regir, y no desde la fecha de la decisión de la controversia en las cortes. *Cf. Sierra, Comisionado* v. *Quilichini*, 72 D.P.R. 659.

■■ El tercer señalamiento es que la corte inferior cometió error al resolver que carecía de jurisdicción para considerar la contención de la apelante al efecto de que el Decreto Mandatorio núm. 12 es nulo por ser confuso y ambiguo. Recientemente resolvimos que cuando un patrono radica una petición de revisión ante este Tribunal de un decreto de la Junta de Salario Mínimo y dictamos sentencia confirmando tal decreto, dicho patrono no puede luego atacar colateralmente el decreto en otro procedimiento levantando nuevas cuestiones, incluyendo cuestiones constitucionales, que pudo suscitar, pero no lo hizo, en su petición de revisión. *Sierra, Comisionado* v. *South Porto Rico Sugar Co.*, ante, pág. 157. En el caso de autos la apelante compareció en el procedimiento ante la Junta cuando ésta consideraba las cuestiones envueltas al emitir el Decreto núm. 12. Allí levantó sustancialmente la misma contención que ahora discute bajo este señalamiento. Sin embargo, aun cuando tuvo amplia oportunidad para hacerlo, la apelante no radicó ninguna petición de revisión ante este Tribunal. Por los mismos motivos expuestos en el caso de la *South Porto Rico*, la apelante no puede enfrascarse en litigación fragmentada levantando ahora en un procedimiento independiente ante los tribunales una cues-

tión que ya le fué resuelta adversamente por la Junta y contra la cual no instó procedimiento de revisión ante este Tribunal. Más aún, confirmamos el Decreto original núm. 12 en un procedimiento radicado por otra compañía de transporte, en el cual se atacaba el decreto con fundamentos similares. *American R. R. Co.* v. *Junta de Salario Mínimo*, 68 D.P.R. 796.

El cuarto señalamiento es que la corte inferior cometió error al resolver que la Ley núm. 379, Leyes de Puerto Rico 1948 ((1) pág. 1255), suplantó la disposición del Decreto núm. 12, para el pago de tiempo y medio después de la novena hora de trabajo.

La Ley núm. 379, que empezó a regir el 15 de mayo de 1948, fija en ocho horas la jornada legal de trabajo en Puerto Rico y requiere paga doble a la ordinaria para todo trabajo en exceso de ocho horas. Pero la apelante arguye que la Ley núm. 379 no se aplica a sus empleados en virtud de la disposición del artículo 22 de dicha ley al efecto de que "todos los términos" de la Ley de Salario Mínimo y de los Decretos Mandatorios promulgados a tenor con la misma "quedarán subsistentes". Afirma que en virtud del artículo 22 el requisito del Decreto núm. 12 para paga doble por la novena hora y tiempo y medio para el trabajo realizado después de la novena hora, está todavía en vigor.

En nuestra opinión original rechazamos esta contención. Dijimos que "al disponer en el artículo 22 que la Ley de Salario Mínimo y los decretos de la Junta permanecerían en vigor, la Legislatura quiso decir que los decretos anteriores permanecerían en vigor solamente hasta el punto de que los decretos (1) o trataran de asuntos no comprendidos en la Ley núm. 379, o (2) establecieran normas *superiores* a aquéllas halladas en la Ley núm. 379." En reconsideración, llegamos a la conclusión de que sobre este punto estábamos equivocados.

La Ley núm. 379 sustituyó a la núm. 49 del 7 de agosto de 1935 ((2) pág. 539). *Cf. Cardona* v. *Corte*, 62 D.P.R. 61. Es un estatuto abarcador que provee como principio general,

paga doble por trabajo extra. Además, el campo cubierto por ella según éste se define en el artículo 16 es muy amplio; incluye industrias, tales como la de transportación, para las cuales la Junta anteriormente había promulgado decretos mandatorios. Por consiguiente, era necesario para la Legislatura elegir entre alternativas. Pudo haber suplantado las disposiciones de estos decretos en cuanto a paga extra, aplicándoles incondicionalmente las disposiciones de la Ley núm. 379. O pudo haber permitido que tales decretos permanecieran en vigor en cuanto a paga extra hasta que fueran modificados por la Junta.

La Legislatura tenía conocimiento de este problema. Y deliberadamente dispuso en el artículo 22 que estos decretos "quedarán subsistentes". No podemos restringir el alcance de este lenguaje sencillo y absoluto, interpretándolo como que provee que los decretos quedarán subsistentes solamente en cuanto establecen normas superiores a aquéllas que se encuentran en la Ley núm. 379. Así resolverlo equivaldría a invadir las funciones de la Legislatura. *In re Castro y Torres Braschi*, ante, pág. 564. La disposición del artículo 22 significa lo que ella dice. Por lo tanto, la disposición del Decreto núm. 12 en cuanto a paga extra a tiempo y medio la paga ordinaria después de la novena hora, fué dejada en vigor por el artículo 22.

La apelante y el *amicus curiae* admiten que la Ley núm. 379 gobierna todos los decretos futuros o las enmiendas de decretos existentes. Sin embargo, alegan que la Legislatura tuvo por miras mediante el artículo 22 dejar inalterado el delicado balance obtenido por la Junta al fijar en sus decretos paga ordinaria, paga extra, vacaciones, ausencias por enfermedad y condiciones de trabajo a la luz de los hechos de cada industria. Véase la sección 1 de la Ley núm. 8, Leyes de Puerto Rico, 1941 ((1) pág. 303). Los apelados cuestionan este argumento. Su posición es que la Junta no toma en consideración tipos de paga extra al establecer tipos ordinarios de paga. Más bien, según los apelados, el único propósito de

la paga extra es desalentar el trabajo extra con el fin de conservar la salud de los empleados. No es necesario que resolvamos esta controversia entre las partes en cuanto a los factores que la Junta toma en consideración al fijar el tipo de paga extra. Basta decir que la Legislatura hizo una elección clara y deliberada en el artículo 22 de conservar la paga extra provista en los decretos existentes.

Hay una excepción a la proposición al efecto de que en virtud del artículo 22 las disposiciones de los decretos anteriores quedarían subsistentes. El artículo 6 dispone que ocho horas constituirá un día de trabajo salvo los casos en que "por costumbre, naturaleza del trabajo, disposición de ley, decreto de la Junta de Salario Mínimo o convenio colectivo, el máximo de horas de labor sea menor de ocho horas diarias." Entonces el artículo 6 sigue disponiendo que "Será nulo todo *decreto*, convenio, cláusula o estipulación que fije una duración mayor de ocho horas a la jornada de trabajo." (Bastardillas nuestras.) Por tanto, huelga decir que ha sido suplantada cualquier disposición hallada en un decreto mandatorio al efecto de que un día de trabajo excederá de ocho horas.

*Por los motivos expuestos, se dejan sin efecto nuestra opinión y sentencia del 21 de marzo de 1952, confirmando la sentencia del anterior tribunal de distrito. En su lugar se dictará nueva sentencia modificando la dictada por el anterior tribunal de distrito, declarando que la Ley núm. 379, Leyes de Puerto Rico, 1948, no suplantó la disposición del Decreto Mandatorio núm. 12 disponiendo paga a los empleados a tiempo y medio la paga ordinaria por trabajo realizado después de la novena hora. Así modificada se confirmará la sentencia.*

Los Jueces Presidente Señor Todd, Jr., y Asociado Señor Sifre no intervinieron.