DOMINGO OLAZAGASTI, demandante y apelado, *v.* EASTERN
SUGAR ASSOCIATES ( *A Trust*) y MANUEL A. DEL VALLE,
demandados y apelantes.

Número 11574.

*Sometido:* 8 de noviembre de 1955. *Resuelto:* 2 de abril de 1956.

*Fiddler, González & Nido* y *Carlos J. Faure*, abogados de los apelantes; *Vicente Géigel Polanco*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Domingo Olazagasti instó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, querella en reclamación de salarios contra la Eastern Sugar Associates (*a trust*). La misma fué declarada con lugar, condenándose a la querellada a pagar a aquél la suma de $11,562.54 por concepto de salarios adeudados, más las costas y gastos incurridos, y $1,500 para honorarios de abogado del querellante.

De la extensa opinión emitida por el tribunal a quo en apoyo de su sentencia, hacemos la siguiente breve síntesis: el querellante trabajó como mecánico en el molino de la Central Pasto Viejo, propiedad de la querellada, entre el 4 de diciembre de 1948 y el 18 de agosto de 1954, período a que se contrae la querella, a virtud de una carta-contrato que aquél firmó a requerimiento de la querellada. La Central Pasto Viejo se dedica a la elaboración de azúcar, que es un artículo para el comercio interestatal, estando la querellada cubierta, por tal motivo, por las disposiciones de la Ley Federal de Normas Razonables de Trabajo.(¹) La referida carta-contrato es similar en su forma a los contratos del tipo "Belo".(²)

---

(¹) Véase 29 U.S.C.A. secs. 201, y siguientes.

(²) Véanse *Walling* v. *Belo Corporation*, 316 U.S. 624–640, 86 L.Ed. 1716; y *Peña* v. *Eastern Sugar Associates*, 75 D.P.R. 304.

Con arreglo a ese contrato la querellada se comprometió originalmente a pagar al querellante un tipo básico de retribución por hora de $0.75 durante la zafra y de $0.923 durante el "tiempo muerto," le garantizó un salario semanal de $48 a base de que trabajara no menos de 56 horas semanales durante la zafra y 48 horas en tiempo muerto, y convino, además, en que "todo tiempo trabajado en exceso de 8 horas diarias y durante el día de descanso que marca la ley" le sería compensado "a razón de dos veces el tipo básico de salario aplicable," y en que "todo tiempo trabajado en exceso de 40 horas semanales durante el tiempo muerto" le sería compensado "a razón de vez y media el tipo básico de salario aplicable." ([3])

---

([3]) La carta-contrato textualmente copiada reza así:

"Diciembre 4, 1948

"A: Sr. Domingo Olazagasti
"Central Pasto Viejo
"Estimado Sr. Olazagasti:

"Queda convenido y acordado que las aseveraciones, acuerdos y compromisos aquí hechos y llevados a cabo por la Eastern Sugar Associates son celebrados y llevados a efecto por los fiduciarios de la Eastern Sugar Associates (*a trust*) como tales fiduciarios, de conformidad con los términos de la declaración de fideicomiso (*trust*) otorgada en Baltimore, Maryland, el 16 de enero de 1934, y no en su capacidad personal, y ningún fiduciario, beneficiario, oficial o agente de la Eastern Sugar Associates será personalmente responsable por razón de los mismos. (Lo anterior figura originalmente en inglés—traducción nuestra.)

"A partir de esta fecha su cargo será el de Mecánico Primero, y usted se reportará y será directamente responsable al Sr. J. Rodríguez Guzmán, y realizará aquellos servicios que él de tiempo en tiempo le asigne.

"Su tipo básico de retribución por hora será el de $0.75, durante la zafra y $0.923 durante el tiempo muerto.

"Anticipamos que de utilizarse sus servicios, será necesario que usted dedique no menos de 56 horas semanales a su trabajo durante el período de zafra y no menos de 48 horas semanales durante el tiempo muerto. Todo tiempo trabajado por usted en exceso de 40·horas semanales durante el tiempo muerto le será compensado a razón de vez y media el tipo básico de salario aplicable. Asimismo, todo tiempo trabajado por usted en exceso de 8 horas diarias o durante el día de descanso que marca la ley, le será compensado a razón de dos veces el tipo básico de salario aplicable.

"En vista de lo anteriormente expuesto estamos dispuestos a proporcionar a usted el número de horas de trabajo semanales arriba mencionado

El contrato entre las partes estuvo en vigor durante todo el tiempo envuelto en este litigio, y el tipo de salario por hora para la época de zafra fué siempre más bajo que el del tiempo muerto. A pesar de lo dispuesto en la carta-contrato, "los querellados no pagaron al querellante lo que le hubiera correspondido de acuerdo con los términos de la misma y con la legislación vigente respecto a las horas trabajadas en exceso de 8 diarias y de 40 semanales." Las horas de trabajo del querellante no fluctuaban de semana a semana en cuanto al período básico de 40 semanales. Sus horas de

---

para la zafra y tiempo muerto respectivamente, de suerte que su retribución semanal durante cualquier semana en que usted trabaje nunca será menor de $48.00.

"Este contrato se considerará en vigor hasta tanto cambien las condiciones en el mismo estipuladas o el mismo sea cancelado por el patrono. Todo otro contrato personal de trabajo vigente entre usted y esta organización por la presente se da por terminado, rigiéndose su empleo con nosotros de ahora en adelante exclusivamente por los términos de este contrato.

"Sírvase manifestar su conformidad con el mismo firmando al calce.

"Eastern Sugar Associates
"(*A trust*)

"Por: (fdo.) J. Rodríguez Guzmán.

"ACEPTADO: hoy día 5 de dic. 1948.
"(firmado) Domingo Olazagasti.
"(Firma."

El 6 de octubre de 1949 la querellada se dirigió al querellante por carta, informándole que a partir de aquella fecha y debido al aumento de salario su tipo básico de salario sería de $0.78125 la hora durante la zafra y $0.9615 durante el tiempo muerto y que su compensación total en cualquier semana sería de no menos de $50 basado en el horario semanal estipulado en el contrato. En 17 de enero de 1952 la querellada se dirigió por carta nuevamente al querellante informándole que a partir de dicho día el tipo básico de salario del querellante sería de $0.859375 durante la zafra y el de $1.0576 durante el tiempo muerto; que todo el tiempo trabajado por éste en exceso de 40 horas semanales durante el tiempo muerto le sería compensado a razón de vez y media el tipo básico de salario aplicable, y que de acuerdo con la Ley núm. 379 de 1948 todo tiempo trabajado por el querellante en exceso de 8 horas diarias o durante el día de descanso que fija la ley, le sería compensado a razón de dos veces el tipo

trabajo eran más bien regulares. Trabajaba un turno diario de 8 horas, sin perjuicio de que la querellada requiriera sus servicios en horas extraordinarias si así convenía a sus intereses. Las horas de trabajo del querellante eran fijas y determinadas. La contención del querellante es que tiene derecho a que las horas trabajadas en exceso de 8 diarias, tanto en zafra como en tiempo muerto, y las horas trabajadas durante el día semanal de descanso, se le compensen a razón de dos veces el tipo básico que resultaría dividiendo el salario semanal entre 40, y a que las horas trabajadas en exceso de 40 semanales, tanto en zafra como en tiempo muerto, se le compensen a razón de vez y media el mismo tipo básico. Tam-

básico de salario aplicable. En 2 de marzo de 1953 la querellada se dirigió una vez más al querellante notificándole que en vista de que en dicho día comenzaría a regir el nuevo salario mínimo federal de 75¢ por hora en la fase fabril de la industria azucarera, y consciente la querellada de que la implantación de dicho salario mínimo habría de requerir una revisión justa y razonable de un sector de su estructura general de salarios, tenía el gusto de informar al querellante que a partir de la semana de trabajo que comenzaba el 26 de febrero de 1953 los términos y condiciones del empleo del querellante con la querellada serían los siguientes:

A—El querellante desempeñaría las labores que de tiempo en tiempo le fueran asignadas por sus superiores;

B—Su tipo regular de compensación por hora sería de $1.20;

C—Su horario de trabajo semanal sería de 48 horas durante el período de zafra y de 45 ¹/₃ horas durante el tiempo muerto;

D—Todas las horas trabajadas por el querellante en exceso de 40 semanales durante el tiempo muerto le serían compensadas a razón de vez y media el tipo regular antes fijado;

E—Las otras horas extraordinarias trabajadas por el querellante a requerimiento de la querellada le serían compensadas a razón del tipo de compensación extra fijado en las leyes o decretos aplicables a las mismas, y su importe sería computado tomando como base el salario regular por hora arriba estipulado.

En las cartas de 6 de octubre de 1949 y 17 de enero de 1952 se hizo constar que las mismas no afectarían en forma alguna las otras condiciones estipuladas en el contrato de servicios bajo el cual el querellante había venido trabajando hasta entonces y que los aumentos en los tipos básicos no comenzarían a regir hasta el día de las fechas de esas cartas. En la de 2 de marzo de 1953, se hizo constar además que ese aviso dejaba sin efecto cualquier otro contrato existente entre el querellante y la querellada.

bién sostiene que su reclamación descansa, en su parte sustantiva, en leyes y disposiciones legales de Puerto Rico.(4)

De la sentencia dictada en su contra la querellada apeló. Los errores que imputa en apelación van dirigidos exclusivamente a las conclusiones de derecho a que llegó el tribunal a quo. Estos errores serán discutidos en el orden que han sido señalados.

■ En primer lugar la querellada sostiene que "erró el tribunal inferior al resolver que el contrato o contratos de servicios tipo Belo entre el apelado y apelantes (5) eran nulos." En el curso de su opinión el tribunal a quo manifestó que:

"Los querellados alegan que los contratos son válidos bajo la doctrina del caso de *Walling* v. *Belo Corporation*, 316 U.S. 624. Veamos si tienen razón. Las circunstancias de la reclamación que estamos considerando son sustancialmente idénticas a las del caso de *José M. Peña* v. *Eastern Sugar Associates*, 75 D.P.R. 304 . . . En el caso de *Peña*, los querellados plantearon esta misma alegación de la existencia y validez del contrato tipo Belo. Su alegación no prosperó. El Tribunal Supremo resolvió que el contrato era nulo por no cumplir con los requisitos esenciales del tipo Belo; que los tipos por hora fijados para la zafra y el tiempo muerto eran ficticios y arbitrarios; que la llamada garantía semanal constituía el salario verdadero, etc. . . .

---

(4) El querellante manifiesta en su alegato que en cuanto al aspecto procesal él se ha acogido al procedimiento especial para reclamaciones de salarios que establece la Ley núm. 10 de 1917 (Vol. II, pág. 217), según ha sido enmendada; y en cuanto a la parte sustantiva en la Ley de Salario Mínimo de Puerto Rico de 5 de abril de 1941, (núm. 8 de 1941, pág. 303), según ha sido enmendada; en el Decreto Mandatorio núm. 3, promulgado por la Junta de Salario Mínimo de Puerto Rico para la industria azucarera con fecha 27 de febrero de 1943; en la Ley núm. 289 de 1946 (pág. 683), estableciendo un día de descanso a la semana; en la Ley núm. 379 de 15 de mayo de 1948 (pág. 1255); y en el art. 1867 del Código Civil, ed. de 1930, que fija el término de prescripción para las reclamaciones de salarios.

(5) En el título de la querella figuran como demandados la Eastern Sugar Associates (*a trust*) y su actual presidente, Manuel A. del Valle. Sin embargo, en el cuerpo de la querella solamente se hace referencia a la Eastern Sugar Associates como querellada.

"La decisión . . . del Tribunal Supremo en el caso de *Peña* es de estricta aplicación al caso de autos por razón de las circunstancias sustancialmente idénticas de uno y otro litigio."

El tribunal sentenciador procedió entonces a aplicar a los hechos del presente caso la doctrina del de *Peña* v. *Eastern Sugar*, supra, y a derivar, a virtud de tal aplicación, todas las consecuencias jurídicas procedentes.

Además de argüir que los hechos aquí envueltos son distintos a los del caso de *Peña*, supra, la querellada-apelante nos pide que repudiemos la doctrina en él establecida respecto a los contratos tipo Belo. *Walling* v. *Belo Corporation*, 316 U.S. 624–640, 86 L.Ed. 1716. Su argumento consiste en que las limitaciones a este tipo de contrato, según quedaron establecidas en dicha opinión, no fueron parte de la doctrina original en el caso de *Belo*, supra. Como consecuencia de ello, alega que "la corte inferior, siguiendo la doctrina de *Peña*, malinterpretó a Belo. . ." y nos cita múltiples casos resueltos bajo la doctrina de *Belo*, supra, sin que, a su juicio, se impusieran en ellos las limitaciones que adopta nuestro Tribunal en el caso de *Peña*.(⁶)

La doctrina establecida por este Tribunal en el caso de *Peña* v. *Eastern Sugar Associates*, 75 D.P.R. 304, respecto a los contratos tipo Belo puede resumirse del siguiente modo:

Dicho contrato es uno, que de ser válido, le permite al patrono pagar un salario semanal uniforme que incluya paga extra por semanas en que la cantidad de trabajo realizado es diferente. Para ser válido debe cumplir con los siguientes requisitos: el tipo sencillo por hora establecido por el contrato debe ser igual o mayor que el fijado por la ley. Debe disponer el pago de tiempo y medio por horas trabajadas en exceso de 40 semanales. Debe fijar un salario semanal ga-

---

(⁶) Por enmiendas posteriores hechas por el Congreso, algunas de esas limitaciones han pasado a formar parte de la Ley de Normas Razonables de Trabajo que rige en la jurisdicción federal. Véase la Ley de Normas Razonables de Trabajo, sec. 207, según fué enmendada en 20 de julio y 26 de octubre de 1949. 29 U.S.C.A. sec. 207.

rantizado. Si el tipo por hora fijado en el contrato es tal que no determina razonablemente los salarios semanales que se intenta pagar, tanto para las horas sencillas como para las horas extras que se trabajan corrientemente, dicho tipo por hora resultará ficticio y nulo. La naturaleza del trabajo del empleado debe exigir horas irregulares de trabajo; y el número de horas que el empleado trabaje de hecho debe fluctuar de semana en semana. El contrato debe ser legal en todo sentido. Las pagas extras dispuestas en el mismo deben ser pagadas de hecho y esto debe hacerse prontamente. La validez del contrato se juzgará por el récord de trabajo del empleado y no meramente por los términos escuetos del contrato.

En el presente caso la carta-contrato suscrita por el querellante y el trabajo que como cuestión de hecho realizó a tenor de la misma no cumplían a cabalidad con los anteriores requisitos, especialmente con el requisito de que el trabajo de él exigía horas irregulares. Por otra parte, la querellada en forma alguna nos ha demostrado que los fundamentos sentados por nosotros para declarar la nulidad del contrato tipo Belo, en el caso de *Peña* fueran erróneos o equivocados. Véase *Eastern Sugar Associates* v. *Peña*, 222 F.2d 934; certiorari denegado por la Corte Suprema de Estados Unidos, 350 U.S. 900. *Cf. Mitchell* v. *Brandtjen & Kluge, Inc.*, 228 F.2d 291 (C.A. 1, 1955). No erró, por tanto, el tribunal a quo al concluir que el contrato aquí envuelto entre el querellante y la querellada era nulo.

■ En segundo lugar la querellada sostiene que "erró el tribunal inferior al resolver que la Ley núm. 379 de 1948 válidamente establece una semana máxima regular de trabajo de 40 horas para la industria azucarera en Puerto Rico durante todo el año y que, por ende, el apelado que era un empleado de fábrica con labores directamente relacionadas con la elaboración de azúcar, trabajaba a base de una semana regular de 40 horas."

A este respecto el tribunal sentenciador manifestó lo siguiente:

". . . que dicha industria [azucarera, en su fase industrial] ha estado cubierta durante todo el curso del empleo del reclamante por el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico, vigente desde el 29 de abril de 1943. Dicho Decreto establece la obligación del patrono de pagar a tipo doble todas las horas trabajadas en exceso de 8 diarias, y a tiempo y medio las horas trabajadas en exceso de 40 semanales en tiempo muerto . . .([7])

". . . dicha industria queda también sujeta conforme a la sec. 5 de la Ley 379 de 1948 . . . a la limitación de una semana de 40 horas tanto durante períodos de zafra como de tiempo muerto y al pago de tiempo y medio por las horas en exceso de 40 semanales. Obsérvese que en este particular la limitación de la ley de Puerto Rico en lo que respecta al máximo de 40 horas semanales y el pago de tiempo y medio por las horas en exceso de 40, coincide con la limitación que al efecto fija la Ley de Normas Razonables del Trabajo . . .

". . . a la luz del Decreto núm. 3 y de lo dispuesto en la sec. 5 de la Ley 379 de 1948, la industria azucarera de Puerto Rico, en su fase industrial, está sujeta a dos limitaciones: a la semana de 40 horas tanto en zafra como en tiempo muerto y a la jornada legal de 8 horas diarias, también tanto en zafra como en tiempo muerto."

En el caso de *Peña* v. *Eastern Sugar Associates*, supra, este Tribunal resolvió el punto aquí suscitado, excepción hecha·de en lo concerniente a ciertos empleados durante la época de zafra y de ciertas otras posibles excepciones, expresándose así a las págs. 321, 322:

---

([7]) Véase el art. B-2(*b*) del Decreto Mandatorio núm. 3. Éste dispone que:

"Ningún patrono empleará a trabajador alguno en la fase industrial de la industria del azúcar durante el llamado 'tiempo muerto' por más de cuarenta (40) horas en cualquier semana de trabajo, a menos que dicho trabajador reciba compensación por su trabajo en exceso de dichas cuarenta (40) horas a razón de tiempo y medio el tipo mínimo de salario aplicable de acuerdo con la escala establecida en el apartado B-1 de este Decreto."

"Con posibles excepciones que aquí no son relevantes, el artículo 5 [de la Ley 379 de 1948] adopta la norma federal de una semana de trabajo de 40 horas para las industrias sujetas a la Ley Federal.(8) Por consiguiente, como proposición general, el artículo 5 y la Ley Federal, leídos conjuntamente, hacen de 40 horas la semana regular de trabajo para la fase industrial del negocio azucarero durante la zafra."(9)

Sería ocioso reproducir aquí en toda su extensión el razonamiento que utilizó este Tribunal para llegar a esa conclusión en el caso de *Peña*, supra. Al igual que en aquél, no nos ha convencido la apelante de que este Tribunal errara al expresarse en la forma en que lo hizo en dicho caso.

El tercer señalamiento de error de la querellada es al efecto de que "erró el tribunal inferior al resolver que la Ley núm. 379 de 1948 válidamente establece una semana regular de trabajo de 40 horas para personas en actividades

---

(8) El art. 5 de la Ley 379 de 15 de mayo de 1948 (págs. 1255, 1259) se lee así:

"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; *Disponiéndose*, sin embargo, que todo patrono de una industria de Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables de Trabajo (Fair Labor Standards Act), aprobada por el Congreso de Estados Unidos de América en 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora de trabajo en exceso de la jornada legal de ocho (8) horas o en exceso de cuarenta (40) horas a la semana un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado o fijare otro norma de trabajo o de compensación, o de ambas. Para determinar el tipo de salario convenido para horas regulares de trabajo, se dividirá el salario diario, semanal, mensual o en otra forma estipulado, por el número de horas regulares que se trabaje durante ese mismo período de acuerdo con las disposiciones de esta Ley." (29 L.P.R.A. sec. 274.)

(9) En el caso de *Peña* v. *Eastern Sugar Associates*, supra, a la página 322, escolio 10, dejamos abierta la cuestión de si el *Disponiéndose* del art. 5 de la Ley 379 requería el pago de horas extras durante la zafra a un empleado como el querellante, no obstante la exención del pago de horas extras a tal empleado contenida en el art. 7(c) de la Ley Federal de Normas Razonables de Trabajo. En el curso de esta opinión resolvemos ahora esta cuestión al discutir el cuarto error señalado.

cubiertas por la Ley Federal de Normas Razonables de Trabajo, por cuanto dicha Ley, al así interpretarse discrimina contra los patronos y/o actividades cubiertas por la Ley Federal y de aquéllas que no lo están."

Somete la querellada la consideración de este error por los fundamentos expuestos por ella al discutir los errores segundo y quinto (sic). En adición a las razones que al discutir el segundo error expusimos para confirmar lo resuelto por el tribunal sentenciador, no está de más apuntar que la Ley 379 de 1948 al establecer una semana regular de trabajo de 40 horas para personas empleadas en actividades cubiertas por la Ley de Normas Razonables de Trabajo, aunque adopta la semana regular de trabajo de 40 horas, como cuestión de hecho establece una fórmula más beneficiosa para el empleado al calcularse la paga de las horas extras. *Peña* v. *Eastern Sugar Associates*, supra, págs. 318, 321; *Eastern Sugar Associates* v. *Peña*, 222 F.2d 934, 938.

■■ El cuarto señalamiento es al efecto de que "erró el tribunal inferior al resolver que la exención de elaboración (*processing exemption*) concedida por la Ley Federal de Normas Razonables de Trabajo (29 U.S.C. 207(*c*)) fué válidamente dejada sin efecto por la Ley núm. 379 de 1948 y por la Ley núm. 289 de 9 de abril de 1946."

La sec. 207 de la Ley Federal de Normas Razonables de Trabajo, reza en lo pertinente así:

"(*a*) Excepto en tanto en esta sección se disponga lo contrario, ningún patrono empleará a ninguno de sus empleados dedicado al comercio o a la producción de artículos para el comercio durante una semana de trabajo que exceda de 40 horas, a menos que tal empleado reciba compensación por su trabajo en exceso de las horas arriba especificadas a razón de no menos de vez y media el tipo regular de trabajo a que está empleado.

". . . . . . . .

"(*c*) En el caso de un patrono dedicado a la elaboración primaria de leche, leche agria, suero, leche desnatada o crema

en sus productos derivados . . . o en la conversión de remolacha, mieles de remolacha, caña de azúcar . . . en azúcar (aunque no en azúcar refinada) o en sirope, las disposiciones del subinciso (*a*) de este título no serán aplicables a sus empleados no importa el sitio donde éstos se dediquen a tal cosa;..."

El art. 5 de la Ley núm. 379 de 1948 (págs. 1255, 1259) dispone que:

"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; *Disponiéndose, sin embargo,* que todo patrono de una industria de Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables de Trabajo (Fair Labor Standards Act), aprobada por el Congreso de Estados Unidos de América en 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora de trabajo en exceso de la jornada legal de ocho (8) horas o en exceso de cuarenta (40) horas a la semana un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado o fijare otra norma de trabajo o de compensación, o de ambas. Para determinar el tipo de salario convenido para horas regulares de trabajo, se dividirá el salario diario, semanal, mensual o en otra forma estipulado, por el número de horas regulares que se trabaje durante ese mismo período de acuerdo con las disposiciones de esta Ley."

Y la Ley núm. 289 de 1946 (pág. 683) preceptúa, en lo esencial:

"Sección 1.—Todo empleado de cualquier establecimiento comercial o industrial, empresa o negocio lucrativo que no estuviere sujeto a las disposiciones sobre cierre al público del artículo 553 del Código Penal de Puerto Rico, según ha sido subsiguientemente enmendado, tendrá derecho a un día de descanso por cada seis (6) días de trabajo.

"A los efectos de esta Ley, se entenderá por día de descanso un período de veinticuatro (24) horas consecutivas."

"Sección 4.—Todo patrono que emplee o permita que un empleado trabaje durante el día de descanso que se establece en esta Ley vendrá obligado a pagarle por las horas trabajadas durante dicho día de descanso un tipo de salario igual al doble del tipo convenido para las horas regulares."

En el caso de *Peña* v. *Eastern Sugar Associates*, supra, pág. 322, este Tribunal se expresó así en el escolio 10:

"A virtud del artículo 7(c) de la Ley Federal los patronos en la fase industrial de la industria azucarera no vienen obligados a pagar tiempo extra por las horas trabajadas en exceso de 40 por *ciertos* empleados durante la zafra . . . Pero aquí no se alega que el trabajo del demandante durante la zafra estaba cubierto por la exención de paga extra contenida en la sección 7(c) de la Ley Federal. Aparentemente el demandante es un empleado a quien debe pagarse tiempo extra en exceso de 40 horas durante la zafra a tenor con la Ley Federal. *Por tanto, dejamos para otro día la cuestión de qué efecto, de tener alguno, tuvo el Disponiéndose del artículo 5 de la Ley núm. 379 sobre la exención comprendida en la sección 7(c) de la Ley Federal.*" (Subrayado nuestro.)

El obrero querellante en el presente caso es un mecánico cuyos deberes comprendían reparar y mantener en condiciones de trabajo el molino de la referida central azucarera de la querellada. Sobre ese hecho no hay controversia alguna. Como tal está incluído en la exención establecida por la sec. 7(c) de la Ley de Normas Razonables de Trabajo. 29 U.S.C.A. sec. 207(c). *Maneja* v. *Waialua Agricultural Co.*, 349 U.S. 254. Por tanto, la cuestión que dejamos pendiente de resolución en el escolio 10 del caso de *Peña* debe ser resuelta en el presente. A este respecto el tribunal sentenciador se expresó así:

"Es obvio que, bajo las disposiciones del art. 18 de la Ley de Normas Razonables de Trabajo, esta exención, en cuanto a horas máximas durante el período de zafra, no impide, restringe ni menoscaba en forma alguna la aplicación de la ley local—más beneficiosa para el empleado—al establecer un límite específico a la semana de trabajo en esta industria y prescribir el pago de compensación extra por las horas trabajadas en exceso de la

limitación semanal. Ya hemos resuelto que el art. 5 de la Ley 379 de 1948 fija un límite máximo de 40 horas a la semana ·de trabajo en las industrias de Puerto Rico cubiertas bajo la citada Ley Federal y determina el pago de tiempo y medio el tipo regular por las horas trabajadas en exceso de 40 semanales. Esa limitación del horario y ese pago adicional son aplicables tanto al período de zafra como de tiempo muerto. Está en orden repetir que las reclamaciones del caso de epígrafe se fundan en leyes y disposiciones legales de Puerto Rico. Una exención otorgada por la Ley Federal, en materia de horas y/o de salarios, no releva del cumplimiento de lo que disponen las leyes locales sobre horas y salarios. De ser estas disposiciones locales más ventajosas para los empleados, como en efecto lo son en cuanto a horas en el presente caso, rigen por sobre lo prescrito en el estatuto federal."

Como puede claramente apreciarse de lo transcrito, el tribunal sentenciador no resolvió de manera taxativa que la exención concedida por la Ley Federal fuera dejada sin efecto por la Ley 379, supra. Lo que sí resolvió dicho tribunal fué que ambas disposiciones legales coexistían en diferentes planos de acción y que tal cosa ocurre en virtud de otro precepto de la misma Ley Federal, que lee así:

"Ninguna de las disposiciones contenidas en las secciones 201 a 219 de este título o en cualquiera de las órdenes que a virtud de las mismas se apruebe excusará el incumplimiento de cualquier Ley Federal o Estatal o de cualquier ordenanza municipal que establezca un salario mínimo superior al salario mínimo establecido en tales secciones o una semana máxima de trabajo inferior a la semana máxima de trabajo establecida en tales secciones . . . Ninguna de las disposiciones contenidas en las secciones 201 a 219 de este título justificará a ningún patrono a reducir un salario pagado por él que sea en exceso del salario mínimo aplicable bajo las secciones 201 a 219 de este título ni justificará a ningún patrono a aumentar las horas de trabajo mantenidas por él que sean menores que las horas máximas aplicables bajo tales secciones." 29 U.S.C.A. sec. 218.

Podemos decir, sin temor a equivocarnos, que al aprobar la referida disposición el Congreso de Estados Unidos hizo patente su intención de impedir que amparándose en la Ley

Federal de Normas de Trabajo pudieran rebajarse normas de trabajo más altas existentes en los diferentes estados o territorios de la unión. En el caso que nos ocupa la norma establecida por el Congreso Federal consistió en eximir al querellante de las ventajas del estatuto federal. Eso no significa, sin embargo, que él quedara forzosamente privado de protección legal. En *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, los hechos fueron distintos a los del presente caso, pero el principio allí establecido es aplicable a éste. En él dijimos a la pág. 291:

". . . El Congreso no se apropió exclusivamente el campo de las normas a fijarse en relación con horas y salarios de empleados que trabajan en el comercio interestatal. Pudo haber prohibido legislación local sobre cualquier aspecto de la materia. Véase *Latoni* v. *Corte*, 67 D.P.R. 140. Pero en vez de prohibir las leyes locales, el Congreso afirmativamente dispuso, quizá por exceso de precaución, en la sección 18 de la Ley sobre Normas Razonables de Trabajo, que los Estados podían proveer un salario mínimo mayor o una semana de trabajo menor que los establecidos por la Ley."

Sin embargo, subsiste la cuestión de si nuestra Asamblea Legislativa al adoptar el art. 5 de la Ley 379 como cuestión de hecho dispuso el pago de horas extras a razón de tiempo y medio después de las 40 horas durante la época de zafra para aquellos empleados que, como el querellante, de lo contrario estarían exentos durante la época de zafra, a virtud de la sec. 7 (c) de la Ley Federal, de las disposiciones sobre horas extras.

Conforme indicamos en el escolio 10 que aparece a la pág. 322, del caso de *Peña*, una manera de convenir con la querellada es que intercalemos en el *Disponiéndose* del art. 5 las palabras " cuando la Ley Federal requiera el pago de horas extras." Esto significaría, desde luego, que no estaríamos siguiendo el lenguaje literal del estatuto. Mas si estamos convencidos de que no fué el propósito legislativo que ese contexto se leyera literalmente, nuestro deber es, doquiera que

el contexto mismo se preste razonablemente a semejante interpretación, interpretarlo en armonía con la intención legislativa. *Borinquen Furniture* v. *Tribunal, etc.* y *Umpierre*, 78 D.P.R. 901; *Colonos de Caña de Santa Juana, Inc.* v. *Junta Azucarera*, 77 D.P.R. 392.

El *Disponiéndose* del art. 5 de la Ley 379 demuestra de su propia faz que la Asamblea Legislativa trataba de reenactar en nuestra ley local la fórmula federal sobre horas extras para paga semanal, en tanto en cuanto la ley local se aplicaba a industrias sujetas a la Ley Federal de Normas Razonables de Trabajo. Este criterio nuestro queda fortalecido por la disposición al efecto de que *sólo* se pagará tiempo y medio, mientras que a tenor de otros artículos de la ley las industrias locales deben pagar tiempo doble después que el obrero trabaja ocho horas por día. El uso de la palabra "sólo" hace que parezca improbable que fuera la intención legislativa extender la responsabilidad del patrono más allá de lo dispuesto en la Ley Federal; sin embargo, ése sería el efecto de interpretar el *Disponiéndose* en el sentido de que excluye la exención sobre la época de zafra a que hace referencia la sec. 7 (c) de la Ley Federal. En adición a ello, el historial legislativo de la Ley 379 demuestra que el *Disponiéndose* fué insertado en ella para "atemperar" el estatuto local a la Ley Federal. No tenemos a la vista la totalidad de ese historial legislativo, mas en una certificación que figura en autos aparece que después de anunciarse por el Presidente del Senado que el P. del S. 25 (que luego se convirtió en la Ley 379 de 1948), había sido aprobado por unanimidad en tercera lectura, y de disponerse su remisión a la Cámara de Representantes, el Senador Pagán, explicando el voto afirmativo que acababa de emitir, se expresó del modo siguiente:

"Votaré la ley con la enmienda que propone el señor Géigel Polanco, pero no estoy de acuerdo con la explicación de que se modifica la ley para atemperarla a la Ley Federal.

"Es un hecho incontrovertible el poder legislativo que tiene nuestra Legislatura para establecer el tipo original que se esta-

blece en el proyecto. Según se establece por la Legislatura, no es incompatible, en forma alguna, con la Ley Federal. Tampoco es un mito el que tenemos poder y autoridad plena para hacer eso.

"Otra razón, que es de carácter jurídico, y es que el proyecto, hecho de esa manera, puede viciar de nulidad toda esa pieza legislativa, que, sin duda alguna, deja de ser uniforme, y establece privilegios de unos patronos contra otros, poniendo en peligro todo el resto de la ley.

"El señor Géigel Polanco informa que las manifestaciones que ha hecho al ser considerada la enmienda anteriormente transcrita, la entregará por escrito al Secretario, para que consten en acta."

El Secretario del Senado certifica además:

". . . que de acuerdo con los récords del Senado de Puerto Rico, las manifestaciones hechas por el señor Géigel Polanco durante la consideración en tercera lectura de dicho P. del S. 25, y que anunciara que entregaría por escrito a la Secretaría, para que constaran en actas, no aparece que las mismas hayan sido entregadas en esta Secretaría, por lo cual, no constan ni en las actas ni en los récords de este Senado."

En ese contexto la palabra "atemperar" únicamente podía significar que el *Disponiéndose* del art. 5 de la Ley 379 preceptuaba sustancialmente la misma paga por horas extras durante la semana regular que la Ley Federal, incluyendo la exención durante la zafra contenida en el art. 7(c).

Esta intención legislativa no fué cumplida a cabalidad. La fraseología de la sec. 7 y la última oración del art. 5 de nuestra ley exigen que se utilicen 40 horas como la semana regular de trabajo—más bien que las horas de hecho trabajadas, tal como lo dispone la Ley Federal—al calcular la paga por horas extras que debe recibir un obrero bajo un contrato Belo frustrado. Como resultado de esto el obrero recibe más paga por horas extras bajo la Ley 379 de la que recibiría bajo la Ley Federal. *Peña* v. *Eastern Sugar Associates*, supra. Es menester admitir que la disposición contenida en la Ley 379, relativa a un método más beneficioso para el

obrero al calcularse la paga por horas extras bajo un contrato Belo frustrado que el que figura en la Ley Federal de Normas Razonables de Trabajo, debilita el argumento de que fué la intención legislativa en el *Disponiéndose* del art. 5 reiterar no sólo la fórmula federal de tiempo y medio después de 40 horas a la semana, sino también la exención federal del pago de tales horas extras en épocas de zafra contenida en el art. 7 (*c*) de la Ley Federal. No obstante, creemos que puede aducirse un argumento bastante convincente— (1) del contexto del *Disponiéndose;* (2) del uso de la palabra *sólo;* y (3) de su historial legislativo—para la proposición de que el *Disponiéndose*, tomado aisladamente puede interpretarse como que conserva, más bien que en efecto elimina, la exención relativa a la paga por horas extras durante la época de zafra contenida en la Ley Federal, en tanto en cuanto concierne a la semana regular de trabajo. Empero, es innecesario que para llegar al resultado que aquí llegamos descansemos únicamente en el *Disponiéndose* del art. 5. El art. 22 de la Ley 379 dispone que "quedarán subsistentes en todos sus términos" la Ley de Salario Mínimo y los Decretos Mandatorios que se hayan promulgado a tenor de la misma. Al interpretar el art. 22 resolvimos que con una excepción, el mismo preserva las disposiciones de todos los decretos existentes, independientemente de si contienen disposiciones superiores o inferiores a las contenidas en la Ley núm. 379. *Caguas Bus Line* v. *Sierra, Com.*, 73 D.P.R. 743. El párrafo B-2 (*b*) del Decreto Mandatorio núm. 3 dispone que:

"Ningún patrono empleará a trabajador alguno en la fase industrial de la industria del azúcar durante el llamado 'tiempo muerto' por más de cuarenta (40) horas en cualquier semana de trabajo, a menos que dicho trabajador reciba compensación por su trabajo en exceso de dichas cuarenta (40) horas a razón de tiempo y medio el tipo mínimo de salario aplicable de acuerdo con la escala establecida en el apartado B-1 de este Decreto."

Al aprobarse este Decreto en febrero de 1943, el art. 7 (c) de la Ley Federal, conforme hemos visto, eximía ciertos empleados como el querellante de las disposiciones sobre paga por horas extras de la Ley Federal durante la época de zafra. Por tanto, es obvio que al limitarse la disposición sobre paga extra a tiempo y medio después de 40 horas en el párrafo B-2 (b) al tiempo muerto, el Decreto Mandatorio núm. 3 en efecto adoptaba como cuestión de ley local la exención para épocas de cosechas contenida en la Ley Federal. (¹⁰) Y cuando el art. 22 de la Ley 379 preservó todos los decretos existentes, la disposición implícita de una exención de paga por horas extras, basada en una semana de trabajo, durante la zafra—así como la disposición específica relativa al pago de tiempo y medio después de 40 horas de trabajo durante el tiempo muerto—continuaron en vigor a tenor de la regla establecida en el caso de *Caguas Bus Line*, supra.

Estamos conscientes de que el razonamiento anterior—al efecto de que la exención en época de zafra hallada implícitamente en el Decreto núm. 3 fué conservada por el art. 22 de la Ley 379—sería más convincente si la exención se hubiera expuesto de manera específica más bien que implícitamente en el párrafo B-2 (b). No obstante, creemos que cuando se agregue este razonamiento a la discusión que previamente hemos hecho de la intención legislativa al aprobar el *Disponiéndose* del art. 5, es correcta la conclusión de que al aprobarse la Ley núm. 379 no fué el propósito legislativo

---

(¹⁰) El párrafo B-2 (a) del Decreto Mandatorio núm. 3 dispone que las horas trabajadas en exceso de ocho al día se pagarán a tiempo doble durante todo el año. Esta disposición también permaneció en vigor— tanto bajo el art. 22 de la Ley 379 como de acuerdo con nuestra opinión en el caso de *Caguas Bus Line*—luego de de la vigencia de la Ley núm. 379. En su consecuencia, independientemente de la duración de la semana de trabajo, un patrono tendría que pagar tiempo doble si se trabajan más de ocho horas en cualquier día durante la época de zafra. Por otra parte, el hecho de que se insertara esta disposición en el decreto hace aún más claro que la retención de la exención sobre la época de zafra en relación con la semana de trabajo, según se dispuso en la sec. 7 (c) de la Ley Federal, fué algo que se hizo deliberadamente.

conceder a los obreros paga por horas extras que éstos no tenían derecho a recibir bajo la sec. 7 (c) de la Ley Federal. Por tanto, el tribunal a quo erró al conceder al querellante paga por horas extras a razón de tiempo y medio por trabajo realizado después de las 40 horas a la semana durante las zafras aquí envueltas.

■ El quinto es al efecto de que el tribunal inferior erró "al resolver que la reclamación del apelado por concepto de horas extraordinarias trabajadas en o antes del 19 de junio de 1952 no está prescrita bajo las disposiciones de la sec. 6, Ley Federal de Portal a Portal (29 U.S.C. 255 (a))."

En el caso de *Eastern Sugar Associates,* v. *Peña,* supra, la Corte de Apelaciones de los Estados Unidos para el Primer Circuito se expresó así a la pág. 938:

"El término prescriptivo fijado por la sección 6 de la Ley de Portal a Portal por sus propios términos tan sólo es aplicable, sin embargo, a causas de acción que surgen 'bajo la Ley Federal de Normas Razonables de Trabajo de 1938, según fué enmendada por la Ley Walsh-Healy o por la Ley Bacon-Davis.' No tiene por miras que se le aplique a causas de acción similares que surjan bajo una ley estatal, ni fué ése su propósito, conforme su historial legislativo demuestra."

Debemos determinar, en su consecuencia, en qué estatuto o estatutos se funda la causa de acción del querellante, a fin de aplicar entonces el estatuto prescriptivo que proceda. El tribunal sentenciador concluyó que la causa de acción del querellante descansa en su totalidad en estatutos locales que le son más beneficiosos que los federales. Se expresó así:

"Las reclamaciones del querellante están enteramente fundadas en leyes y disposiciones legales de Puerto Rico . . . Así ocurre con la compensación reclamada por concepto de las horas trabajadas en exceso de 8 diarias, por las horas trabajadas en el día semanal de descanso y por las horas trabajadas en exceso de 40 a la semana. La circunstancia de que la Ley Federal de Normas Razonables de Trabajo también garantizara al empleado el pago de tiempo y medio por las horas trabajadas a la semana en exceso de 40—derecho que le

garantiza el art. 5 de la Ley 379 de 1948 de Puerto Rico—no le impedía acogerse al estatuto local, como en efecto lo hizo."

Al igual que hicimos en el caso de *Peña*, supra, no es menester que determinemos ahora si debemos aplicar el término prescriptivo fijado por el Código Civil o el fijado por el estatuto federal a reclamaciones de salarios para las cuales tanto la ley local como la federal fijan exactamente la misma compensación. Aunque tanto la ley local como la ley federal garantizaran al querellante el pago de tiempo y medio por las horas trabajadas en exceso de 40 semanales durante el tiempo muerto, la aplicación del estatuto local le resulta siempre más beneficiosa cuando, como ocurre aquí, está envuelto un contrato tipo Belo frustrado. Ello se debe a que bajo la Ley Federal el tipo sencillo se calcula a base del tiempo que como cuestión de hecho el obrero trabajó durante cada semana, mientras que bajo el estatuto local el tipo sencillo se calcula a base de las horas en la semana regular de trabajo. Sobre este particular el Tribunal de Apelaciones del Primer Circuito se expresó como sigue, a la pág. 938 en *Eastern Sugar Associates* v. *Peña*, supra:

"Esto es así porque las dos leyes difieren respecto a la forma en que el salario regular del empleado ha de computarse en relación con las horas trabajadas en exceso . . . En su consecuencia, en todo caso en que el demandante trabajó más de 40 horas por su salario semanal . . . la remuneración por horas en exceso a que tiene derecho bajo la Ley de Puerto Rico es mayor que la fijada por la Ley Federal, independientemente de si trabajó o no durante un día de descanso o durante más de 8 horas en cualquier otro día."

En lo que respecta a las horas trabajadas en exceso de 8 diarias o en el día de descanso, es obvio que la aplicación de la ley local resulta igualmente más beneficiosa para el obrero. Concluímos, por ende, que la causa de acción del querellante en el presente caso descansa en su totalidad en leyes o disposiciones legales de Puerto Rico y que por tanto no es

aplicable el término prescriptivo de la Ley de Portal a Portal. Véanse *Peña* v. *Eastern Sugar Associates*, supra, a las págs. 326 y 327, así como *Eastern Sugar* v. *Peña*, supra, a las págs. 936, 937 y 938.([11])

■ El sexto error señalado es al efecto de que "erró el tribunal inferior al imponer a los apelantes como parte de la sentencia la obligación de satisfacer una cantidad igual a la principal adeudada."

Este supuesto error apenas amerita discusión. Fué planteado por la querellada-apelante en otra ocasión y resuelto en contra suya. Véase *Peña* v. *Eastern Sugar Associates*, supra. No obstante ello, repetimos aquí que la disposición del art. 13 de la Ley 379 de 1948—29 L.P.R.A. sec. 282— respecto a daños líquidos es imperativa. En igual forma nos expresamos respecto a una disposición similar contenida en el art. 25 de la Ley 8 de 1941—29 L.P.R.A. sec. 236— (véanse además *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267; y *Peña* v. *Eastern Sugar Associates*, supra, a la pág. 318.)

■ Finalmente sostiene la apelante que el tribunal inferior "erró al resolver que el art. 1867, Código Civil de Puerto Rico, ed. 1930, es válido y constitucional." La parte pertinente de este artículo aparece copiada al pie de la letra en el escolio 11.

---

([11]) Cuando en 9 de junio de 1954 el querellante radicó su querella él aún trabajaba para la querellada. A tenor de lo dispuesto en el art. 1867 del Código Civil, ed. de 1930, su acción no había prescrito. 31 L.P.R.A. sec. 5297. Este artículo en lo esencial dispone:

"Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

" . . . . . .

"(3) La de pagar a los menestrales, criados y jornaleros el importe de sus servicios, y de los suministros o desembolsos que hubiesen hecho, concernientes a los mismos.

" . . . . . .

"El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará desde que dejaron de prestarse los respectivos servicios."

En *Peña* v. *Eastern Sugar Associates*, tantas veces mencionado, dijimos:

"Las reclamaciones en este caso surgieron bajo leyes locales que son válidas porque establecen normas de salario mínimo y de horas máximas que no se encuentran en la Ley Sobre Normas Razonables de Trabajo.   . . .

"Nada encontramos en la sección 6 de la Ley de Portal o en su historial legislativo que indique que el Congreso tuvo por miras que dicha ley se aplicase como un estatuto prescriptivo a las reclamaciones que surjan bajo leyes estatales válidas.

"  .     .     .     .     .     .     .

"Toda vez que las reclamaciones en este caso son de derechos válidamente creados por ley local únicamente, la cuestión de prescripción se rige por ley local.   Y bajo las leyes de Puerto Rico las reclamaciones en este caso no han prescrito.   . . .

". . . nos reafirmamos en nuestro criterio de que las reclamaciones de salarios que estén basadas exclusivamente en estatutos locales se rigen por nuestra regla local con respecto a prescripción aun en aquellos casos en que el empleado esté sujeto a la Ley sobre Normas Razonables de Trabajo."   Véanse págs. 327 y 331.

La médula del argumento de la querellada-apelante es que la razón de ser del mencionado artículo ha dejado de existir y que "de interpretarse con la limitación con que fuera originalmente adoptado con relación a la fecha de partida para computar el período de prescripción, es nulo e inconstitucional, por arbitrario, irrazonable y caprichoso, y por privar a los apelantes de su propiedad sin el debido procedimiento de ley y privarle de la igual protección de las leyes, clasificándolos arbitrariamente."   Los razonamientos de la querellada van dirigidos más bien a combatir la sabiduría del estatuto que su constitucionalidad.   A ello contestamos con las palabras de este Tribunal en el caso de *Muñoz* v. *Corte*, 63 D.P.R. 236, 249, donde se planteó una cuestión similar, a saber:

116

"Pero esas consideraciones, lógicas y justas como son, deben ser sometidas a la Asamblea Legislativa y no a los tribunales, a quienes les está vedado pasar sobre la bondad y sabiduría de las leyes."

*La sentencia del tribunal a quo será modificada en el sentido de eliminar la paga por horas extras a tiempo y medio después de 40 horas a la semana durante las zafras, y así modificada la sentencia apelada será confirmada.*([12])

El Juez Asociado Sr. Sifre no intervino.

---

([12]) La querellada no ha señalado error alguno—y nosotros tampoco lo hallamos—en relación con la doble paga concedida al querellante por los días de descanso.

Tampoco hallamos que el tribunal a quo cometiera error alguno al conceder al obrero paga doble por las horas trabajadas en exceso de 8 diarias. Véase el párrafo B-2(*a*) del Decreto Mandatorio núm. 3. *Cf.* Artículo II, Sección 16 de la Constitución del Estado Libre Asociado de Puerto Rico—Tomo 1 L.P.R.A. sec. 16, pág. 191.