RAFAEL PEÑA ARÁN, demandante y peticionario, *v.* ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES, demandada y peticionaria.

Número: O-85-53          Resuelto: 25 de octubre de 1985

*Aurelio Gracia Morales,* abogado del recurrente; *Darío Bonet Cedó,* abogado de la recurrida.

PER CURIAM: El 27 de febrero de 1981 Rafael Peña Arán sufrió un accidente en un choque entre su motocicleta y un vehículo marca Chevrolet Nova conducido por María Calzada Casanova. Como consecuencia del accidente Peña Arán recibió serias fracturas y heridas en su pierna izquierda, razón por la cual solicitó ante la Administración de Compensaciones por Accidentes de Automóviles (la A.C.A.A.) los beneficios que concede la ley orgánica de tal agencia, Ley Núm. 138 de 26 de junio de 1968 (9 L.P.R.A. sec. 2051 *et seq.*). La A.C.A.A. le negó los beneficios aduciendo dos fundamentos: 1) al momento de ocurrir el accidente Peña Arán solamente tenía una licencia de aprendizaje y no de conductor, y 2) al momento del accidente Peña Arán no había pagado los derechos correspondientes al Departamento de Transportación y Obras Públicas (el marbete) para la motocicleta. Se basa la A.C.A.A. en la Sec. 6 inciso (3)(b) de la Ley de Protección Social por Accidentes de Automóviles, 9 L.P.R.A. sec. 2055(3)(b), que dispone que no tendrán derecho a cobrar los beneficios que la ley provee para las víctimas aquellas personas "que al momento del accidente estuvieren conduciendo un vehículo de motor sin estar autorizadas legalmente para ello".

Peña Arán acudió entonces en alzada ante el Tribunal Superior, quien adoptó la interpretación de la A.C.A.A. sobre la necesidad de tener un marbete en el vehículo para poder reclamar los beneficios de la ley. Respecto al primer argumento el juez determinó que para estar autorizado a conducir una

motocicleta sólo se requiere una licencia de aprendizaje. La A.C.A.A. estuvo conforme con esta interpretación.

El demandante recurre ante nosotros por vía de *certiorari* y hace dos señalamientos de error:

A. Erró el Tribunal de Instancia, como cuestión de derecho, al resolver que el aquí reclamente no tiene derecho a los beneficios que concede la ley por razón de no haber pagado el marbete del vehículo de motor (motocicleta) que conducía al momento del accidente.

B. Erró el Tribunal de Instancia al negarle los beneficios al aquí reclamante cuando, como cuestión de derecho era irrelevante considerar si el reclamante había pagado marbete o no, pues, el accidente que le produjo los daños al joven Rafael Peña Arán fueron causados a consecuencia del uso de vehículo de motor conducido por *otra persona,* quien fue responsable del accidente, y cuyo vehículo gozaba plenamente de la cubierta brindada por la ley.

En el informe de las Comisiones de Gobierno de lo Judicial y de Hacienda que recomendaron la aprobación del P. de la C. 874, fuente de la ley de la A.C.A.A., se encuentra una explicación de los objetivos de la ley:

El objetivo que animó a la Asamblea Legislativa en la aprobación de la R. C. núm. 105 fue el de buscar una solución al cada día más creciente problema de las víctimas de accidentes de tránsito que, dentro del sistema actual de compensación fundado en el concepto de negligencia, no reciben compensación alguna por las lesiones sufridas.

En adición a los sufrimientos que producen las lesiones corporales, que en muchos casos resultan en la pérdida de las funciones de extremidades y órganos vitales y a veces en la pérdida de la vida, los accidentes de tránsito tienen un gran impacto económico y moral adverso sobre la víctima y los miembros de la familia. En términos generales mientras mayor sea el número de dependientes y menor la edad de éstos, más grave será el impacto económico en caso de la muerte o incapacidad del jefe de la familia. En el caso de dependientes adultos, el impacto económico será más grave en la medida en que el grado de dependencia de éstos sea

mayor. El impacto moral no puede medirse. En uno u otro caso, el desvalimiento de la familia puede llegar a ser total.

Como resultado del aumento en la incidencia de los accidentes, el número de víctimas de accidentes de tránsito ha ido aumentando anualmente en Puerto Rico a un ritmo que constituye un motivo de grave preocupación para nuestra sociedad. Aun cuando estas víctimas tienen el recurso legal de demandar al causante del daño, éste con frecuencia no cuenta con medios económicos para responder. Esto es muy común en Puerto Rico donde la mayor parte de los conductores son insolventes o no están asegurados.

Por otra parte, el procedimiento legal que hay que seguir para la obtención de resarcimiento es uno largo y costoso en el cual la víctima tarda a veces años en conseguir, si prueba la negligencia del demandado, una sentencia a su favor. Después de conseguida esta sentencia, queda aún por delante la ardua y muchas veces estéril tarea de cobrar la misma a una persona insolvente y no asegurada.

Este cuadro, que ya tiene categoría de problema social, es el trasfondo sobre el cual se ha esbozado la medida objeto de nuestra consideración. (¹)

■ En dos casos este Tribunal ha rechazado las interpretaciones que ha hecho la A.C.A.A. de su ley habilitadora bajo el fundamento de que sería ir en contra de su propósito. En *A.C.A.A.* v. *Yantín*, 103 D.P.R. 59, 63–64 (1974), señaló el Tribunal:

La posición de la A.C.A.A. al insistir en un supuesto derecho de reembolso rompe este esquema legislativo privando a la víctima y sus beneficiarios de todo beneficio bajo la ley. Por un lado, éstos no podrían recobrar del causante del daño y sus aseguradores el importe de los beneficios a que tiene derecho bajo la ley porque, como ya vimos, el Art. 8 expresamente releva de dicho pago al causante. Por otro lado, tampoco podrían obtener de la A.C.A.A. el pago de esos benefi-

---

(¹)22 Diario de Sesiones de la Asamblea Legislativa (Cámara), T. 3, pág. 1041 (1968). Véanse también: *A.C.A.A.* v. *Tribunal Superior*, 101 D.P.R. 518 (1973); *Morales* v. *Lizarribar*, 100 D.P.R. 717 (1972); *Rivera* v. *Batistini*, 100 D.P.R. 499 (1972).

cios porque los mismos estarían sujetos a reembolso. Se desvanece así en una interpretación caprichosa los loables propósitos de la Ley de Protección Social por Accidentes de Automóviles. Nuestra misión —no parece necesario recordarlo— es darle eficacia a la ley y no restársela con interpretaciones que producen resultados inicuos.

■ Hace poco, en *Ortiz Morales* v. *A. C. A. A.*, 116 D.P.R. 387 (1985), el Tribunal reiteró lo anterior:

La concepción del estatuto de Protección Social por Accidentes de Automóviles persigue un fin eminentemente social. . . .

.　　.　　.　　.　　.　　.　　.　　.

Con miras a la consecución de la intención que la inspiró, en su redacción se incorporaron trámites sencillos, y la flexibilidad necesaria para hacer viable la reparación del daño.

El carácter de protección social de la legislación apoya toda interpretación razonable y balanceada que tienda a beneficiar al tutelado. El Reglamento para implantarla no debe derrotar el espíritu que la inspiró.

Ello no significa, por supuesto, que al interpretar esta ley se extienda la protección que ella ofrece para alcanzar situaciones no contempladas en su esquema de operación. *Ruiz Firpo* v. *A.C.A.A.*, 109 D.P.R. 1 (1979).

La primera controversia a dirimir a la luz de este trasfondo es si la exclusión que hace la Sec. 6 inciso (3) (b) de la ley se refiere únicamente a aquellas personas que al momento del accidente no tengan la licencia requerida para conducir el vehículo, o si incluye también a aquellas que conduzcan un vehículo para el cual no se han pagado los derechos correspondientes del marbete. La cuestión se reduce a interpretar qué quiso decir el legislador al excluir a aquellas personas "que al momento del accidente estuvieren conduciendo un vehículo de motor sin estar autorizadas legalmente para ello". [2]

---

[2] 9 L.P.R.A. sec. 2055.

■ El Reglamento de la A.C.A.A. de 1976 dispone en su Regla 4(B):

B—Requisito de Autorización para Conducir:

Para tener derecho a los beneficios de la Ley, el conductor del vehículo de motor que sufra lesiones en un accidente deberá estar legalmente autorizado para conducir dicho vehículo en la forma y con los requisitos impuestos por tal autorización. Por tanto, *será inelegible para dichos beneficios el conductor que esté utilizando al momento del accidente un tipo de vehículo que no haya sido autorizado a conducir;* el conductor que solamente tenga un permiso de aprendizaje y no estuviere acompañado de un conductor autorizado al ocurrir el accidente, o que de otra forma no esté cumpliendo con los requisitos impuestos por la autorización para conducir que se le otorgara. La norma indicada anteriormente es aplicable al uso de motonetas, motocicletas, o bicicletas con motor, y todo otro tipo de vehículo que la Ley de Vehículos y Tránsito clasifique como vehículo de motor. (Énfasis suplido.)

La A.C.A.A. argumenta que para una persona estar autorizada a conducir un vehículo de motor, el vehículo, a su vez, tiene que estar autorizado a transitar por las carreteras, para lo cual necesita un marbete. Añade la A.C.A.A. que no es posible que una persona que no haya pagado la aportación anual (la "prima") que requiere la A.C.A.A. pueda recibir los beneficios provenientes de ese sistema al cual ha decidido no acogerse. Olvida la A.C.A.A. que ella no es una aseguradora común, por lo que no le aplican las normas de los seguros privados. *Mercado Santini* v. *Tribunal Superior*, 101 D.P.R. 523, 529–530 (1973). Además, en múltiples ocasiones el conductor reclamante no es el dueño del vehículo y, por consiguiente, no es quien viene obligado a pagar la prima de la A.C.A.A.

Sostiene la recurrida, basándose en la sentencia de instancia, que el darle cubierta a los conductores que no tengan marbetes promovería una violación a la Ley de Vehículos y Trán-

sito que requiere la posesión del marbete para poder transitar por las carreteras del país, 9 L.P.R.A. sec. 403. Basta señalar que la multa que impone la Ley de Tránsito a quien no tenga el marbete al día debe constituir suficiente desaliento para la violación de la ley. No hay indicación alguna que la ley de la A.C.A.A. haya tenido el propósito adicional de proveer un castigo suplementario a quienes no posean un marbete al día.

■ Lo lógico, además, es que a quien se excluya sea a aquellas personas que no poseen una licencia suficiente para manejar el vehículo en cuestión, porque tales personas no han demostrado su pericia y capacidad al conducir y son, por tanto, más propensas a tener accidentes. La exclusión en tal caso es una forma de disuadir a estos conductores de manejar y, de esta manera, evitar accidentes. El poseer o no un marbete no tiene nada que ver con la pericia o capacidad para manejar. Adviértase que todas las exclusiones enumeradas en la Sec. 6 de la ley, 9 L.P.R.A. sec. 2055(3) se refieren a situaciones en que los conductores están más propensos a sufrir accidentes (acto u omisión culposa para causarse daño a sí mismo, carreras de automóviles, acto criminal y estado de embriaguez). (3) Tal no es el caso de la falta de posesión de un marbete al día.

En vista de la comisión del error señalado primeramente es innecesario considerar el segundo planteamiento del peticionario.

*Se revocará la sentencia recurrida.*

El Juez Asociado Señor Negrón García emitió opinión disidente a la cual se une el Juez Asociado Señor Rebollo López.

---

(3) Estas personas no sólo están exentas de ser beneficiarios, sino que si son los responsables del accidente, la A.C.A.A. puede requerirles el reembolso de todos los gastos en que ésta haya incurrido en relación con dicho accidente. Véase 9 L.P.R.A. sec. 2056.

— O —

Opinión disidente del Juez Asociado Señor Negrón García a la cual se une el Juez Asociado Señor Rebollo López.

I

La interpretación mayoritaria desatiende la base fundamental en que se apuntala e implanta, en todas sus dimensiones jurídicas y fiscales, el estatuto creador de la Administración de Compensación por Accidentes de Automóviles. 9 L.P.R.A. sec. 2051 *et seq.* El diseño legislativo tiene como espina dorsal el pago compulsorio de una prima anual correspondiente (marbete). "El costo de este seguro se distribuirá entre todos los dueños de vehículos de motor mediante una aportación anual que se pagará al momento de *registrar el vehículo.*" (Énfasis suplido.) 9 L.P.R.A. sec. 2064(1).

Este claro mandato implica que no se puede registrar un vehículo de motor sin pagar simultáneamente la prima anual del seguro de la A.C.A.A. Precisamente en el documento de licencia que se expide al registrarse el vehículo, se hace constar el pago de los derechos por concepto del registro y del seguro compulsorio.

En su justa y correcta apreciación, el conductor de un vehículo de motor que no ha pagado (o renovado) la prima del seguro compulsorio, no lo ha registrado. Carece de una licencia válida para transitar el vehículo por las vías públicas del país. Igual conclusión se impone si no tiene expedida a su favor la licencia necesaria de conductor. En ambas situaciones la persona estaría conduciendo un vehículo "sin estar autorizada legalmente para ello", por violar preceptos básicos de la Ley de Vehículos y Tránsito.

En esas circunstancias la propia ley de la A.C.A.A. niega cubierta. La Sec. 6(3)(b) reza:

(3) Las siguientes personas no tendrán derecho a cobrar los beneficios que esta ley provee para la víctima del acci-

dente, pero sus beneficiarios tendrán derecho a los beneficios que les correspondan como tales:

. . . . . . . .

(b) aquellas que al momento del accidente estuvieren conduciendo un vehículo de motor *sin estar autorizadas legalmente para ello.* (Énfasis suplido.) 9 L.P.R.A. sec. 2055.

Por loable que sea el fin social del estatuto, no debemos extender su cubierta al extremo de desnaturalizar su razón de ser.

## II

Lo expuesto dispone del planteamiento del peticionario Peña Arán, en el sentido de que es acreedor a los beneficios de la A.C.A.A., por su condición de víctima resultante del impacto con otro vehículo asegurado. La ley no le cobija. Sólo extiende su protección, directa o indirectamente, a "sus beneficiarios".

Por los fundamentos expuestos, confirmaríamos al Tribunal Superior, Sala de San Juan.