# 98 DTA 214

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE PONCE Y AIBONITO

EDWIN RIVERA NAZARIO
Recurrente

v.

ADMINISTRACION DE COMPENSACIONES POR ACCIDENTES DE AUTOMOVILES
Recurrida

Núm. KLRA-98-00221

San Juan, Puerto Rico, a 19 de agosto de 1998

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Aponte Jiménez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

El recurrente, Edwin Rivera Nazario *("Rivera Nazario")*, nos solicita la revocación de una resolución emitida por la Junta de Directores de la Administración de Compensaciones por Accidentes de Automóviles (en adelante la *"ACAA")*. Mediante dicha providencia el referido organismo confirmó la decisión del Director Ejecutivo de la Administración de Compensaciones por Accidentes de Automóviles que denegó a Rivera Nazario los beneficios que dispone la Ley de Protección Social por Accidentes de Automóviles. Por los fundamentos que a continuación exponemos, denegamos la expedición del recurso presentado.

El 25 de noviembre de 1996, alrededor de las 10:30 de la mañana, la señora Evelyn Nazario, Q.E.P.D., esposa de Rivera Nazario, conducía su automóvil por la carretera 561 en la municipalidad de Villalba. Estaba acompañada por su madre y por su hija. Súbitamente se percató que una máquina de las utilizadas en la industria de la construcción, conocida como *"loader"*, propiedad del Municipio de Villalba, discurría sin conductor por dicha carretera en dirección opuesta. El operador del equipo de construcción en cuestión y su acompañante habían abandonado el mismo instantes antes por razón de un desperfecto en los frenos de la referida máquina. La señora Nazario, al ver acercarse la máquina detuvo su automóvil. El *"loader"* se desvió y fue a impactar las escaleras de una residencia. Mientras la señora Nazario hizo uso de su automóvil, no impactó el *"loader"* ni otro objeto o persona. Tampoco recibió impacto alguno de otro vehículo de motor ni su automóvil sufrió desperfecto alguno. Luego del incidente, la señora Nazario condujo su vehículo hasta llegar a la casa de su madre. Ese mismo día fue llevada en dos ocasiones al Centro de Diagnóstico y Tratamiento (CDT) de Villalba. Le diagnosticaron ansiedad post-accidente. Al día siguiente volvieron a llevarla al CDT. De ahí la trasladaron al Hospital San Cristóbal de Ponce donde falleció a los dos días luego de habérsele diagnosticado un infarto cerebral masivo. El 29 de noviembre de 1996 se le practicó la autopsia. De acuerdo con el informe murió a consecuencia de un paro cardio-respiratorio como complicación de un infarto cerebral.

El Director Ejecutivo de la ACCA denegó al reclamante Rivera Nazario los beneficios por muerte que éste solicitó como esposo de la señora Nazario. Se basó en que la Ley de Compensaciones por Accidentes de Automóviles no contempla como accidente automovilístico el suceso que le ocurrió a su esposa, ni podía considerarse a ésta como víctima a tenor de esa ley. Inconforme, Rivera Nazario acudió por vía de reconsideración ante la Junta de Directores de la ACCA. Solicitó que se revocara la resolución emitida por el Director Ejecutivo. La Junta de Directores, mediante resolución de fecha 25 de marzo de 1998, confirmó la decisión del Director Ejecutivo. Aún inconforme, Rivera Nazario instó el presente recurso de revisión administrativa. Señala que la Junta de Directores de la ACCA incidió al resolver que la situación de autos no se encuentra cubierta por las disposiciones de la Ley Núm. 138 del 26 de junio de 1968, según enmendada, 9 L.P.R.A. secs. 2051 *et seq*.

La Sección 3 de esta ley, 9 L.P.R.A. sec. 2053, conocida como Ley de Protección Social por Accidentes de Automóviles, referente a cubierta consigna lo siguiente: Aplicabilidad; Beneficios:

*"Tendrá derecho a los beneficios que dispone esta Ley toda persona natural que sufre daño corporal, enfermedad o la muerte resultante de éstas, como consecuencia del mantenimiento o uso por sí misma o por otra persona de un vehículo de motor como tal vehículo. Dicha persona será denominada de aquí en adelante "la víctima".*

La Sección 2 de la Ley, 9 L.P.R.A. sec. 2052, define, entre otros términos, vehículo de motor y uso de vehículo de motor como sigue: Definiciones:

Los siguientes términos tendrán los significados que a continuación se expresan:

*"(1)...*

*(2)...*

*(3)...*

*(4) "Vehículos de Motor" significa cualquier vehículo incluyendo vehículos de arrastre (trailers), diseñado para operar en las vías públicas impulsado por energía que no sea de tipo muscular, cuyo tipo de vehículo sea autorizado a discurrir por las vías públicas por el Departamento de Transportación y Obras Públicas mediante la expedición de una Licencia de Vehículo de Motor."*

*(13) "uso de vehículo de motor como tal vehículo" significa la utilización de un vehículo de motor con el propósito de una persona trasladarse a sí misma o a otras a un lugar distinto, o llevar, empujar o arrastrar animales, plantas u objetos. No incluye usos del vehículo incidentales al objeto antes señalado ni sucesos fortuitos que no sean durante o como consecuencia directa de tal uso al momento o razonablemente inmediato al mismo. Incluye la carga o descarga del vehículo."*

Como se ve, la Ley incluye en su cubierta una serie de situaciones, algunas de las cuales están expresamente señaladas. El alcance de la cubierta parte de la existencia de un accidente y no de la mera ocurrencia de un incidente. La Regla 4A del Reglamento Para la Ley de Protección Social por Accidentes de Automóviles establece el tipo de accidente incluido en la cubierta de la ley. A esos fines dispone como sigue:

*"A. Tipo de Accidente Incluido*

*No todo tipo de accidente de vehículo de motor está incluido en la cubierta que provee la Ley, sino aquéllos en que las lesiones, enfermedad, o la muerte resultan como consecuencia del mantenimiento o uso de un vehículo de motor como tal vehículo. Por lo tanto, están excluidos de dicha cubierta los accidentes que son meramente incidentales y no surgen como consecuencia del mantenimiento o uso del vehículo de motor como tal vehículo según definido en la Ley. Por ejemplo: no están incluidas las lesiones causadas mientras se utiliza el vehículo de motor para fines que no son aquéllos para los cuales se utiliza normalmente, como lavarlo, para juegos de niños, para descanso, como residencia o para transacciones comerciales o de venta de artículos o comestibles, mientras el vehículo no esté siendo utilizado como tal vehículo. Tampoco están incluidas las lesiones causadas por causas fortuitas, como lesiones causadas por proyectiles lanzados desde dentro o fuera del vehículo en forma accidental o criminal; o por otras ocurrencias naturales que produzcan lesiones, enfermedad o la muerte que no estén relacionadas con el uso del vehículo como tal vehículo o con su mantenimiento. Sin embargo, accidentes de vehículos en viaje, debido a derrumbes o inundaciones en las vías de tránsito, estarán cubiertos por seguir como consecuencia del uso del vehículo como tal vehículo. En carga y descarga del vehículo de motor también se incluye el montarse y bajarse del mismo, al inicio, durante y a la terminación de un viaje. Están incluidas aquellas reparaciones, servicio y mantenimiento al inicio y durante un viaje, así como aquéllas que se realicen para que el vehículo pueda funcionar adecuadamente, pero no las que se efectúen en componentes del vehículo que no estén formando parte del vehículo al momento de reparación."*

El Tribunal Supremo de Puerto Rico en *Coira Luquis v. De Jesús Rosas,* 103 D.P.R. 345 (1975), interpretó varios aspectos de esa Ley. Resolvió que el término *"víctima"* según utilizado en la sección 3 de la Ley 138, *supra,* sólo admitirá la siguiente interpretación:

*"El transcrito texto, así como otros artículos de la misma ley, revelan un diseño para compensación de víctimas de accidentes de automóviles dentro del cual el concepto 'víctima' se circunscribe a la persona que en contacto físico e inmediato con un vehículo de motor sufre daño, bien al entrar o al salir del mismo, mientras viaja o permanece en el automóvil o al ser atropellado por un vehículo. No admite otra interpretación la definición que hace el legislador en la Sec. 3 de la ley (9 L.P.R.A. sec. 2053) cuando ordena: "tendrá derecho a los beneficios que dispone este Capítulo toda persona natural que sufra daño corporal, enfermedad o la muerte resultante de éstas, como consecuencia del mantenimiento o uso por sí misma o por otra persona de un vehículo de motor como tal vehículo. Dicha persona será denominada de aquí en adelante 'la víctima'." Id.,* pág. 348.

Claramente se desprende de la citada opinión, que para que una persona sea considerada como *"víctima"* de acuerdo a la Ley 138, *supra,* es necesario que sufra el daño como resultado del contacto físico, inmediato y directo con un vehículo de motor.

En el presente caso, la señora Nazario no tuvo contacto físico con su vehículo de motor. Tampoco

hay evidencia de que ella o cualquiera de las personas que viajaban en el automóvil sufrieran un impacto físico o lesión como consecuencia de que su vehículo de motor haya impactado o fuese impactado por el *"loader"*. Aunque el *"loader"* amenazó con chocar el automóvil de la señora Nazario, se desvió sin hacer contacto. Por lo tanto, el requisito del daño como resultado del contacto físico, inmediato y directo con el vehículo de motor, no se cumple. Como alegan los recurridos, *"pudo haber ocurrido un accidente, pero no ocurrió al desviarse el "loader"*. Por lo tanto, la situación creada exclusivamente por el *"loader"*, sin la ocurrencia de impacto físico o contacto inmediato y directo, no puede ser considerada como el daño a una víctima que contempla el estatuto y que surge como consecuencia del uso o mantenimiento de un vehículo de motor como tal vehículo.

Por otra parte, según lo establece la citada Regla 4A del Reglamento de Compensaciones por Accidentes de Automóviles, *"no todo tipo de accidente de vehículo de motor está incluido en la cubierta que provee la Ley"*. Entre otros, están excluidos de dicha cubierta las lesiones causadas por causas fortuitas que no sean durante o como consecuencia directa del uso del vehículo o inmediata al mismo y por proyectiles lanzados desde dentro o fuera del vehículo en forma accidental o criminal. Aunque no cabe duda que en el momento en que ocurrió el incidente en cuestión la señora Nazario se encontraba en el uso de su vehículo de motor, ese hecho no convierte a cualquier situación que ocurra en las vías públicas y que pueda afectar al conductor o a sus acompañantes en un accidente cubierto por la Ley 138, *supra*.

La interpretación que propone el recurrente no toma en consideración que el propósito primordial de la legislación es reducir a un mínimo los efectos de los accidentes de tránsito, estableciendo un sistema de seguro y compensación para indemnizar a sus víctimas cuando las personas causantes de los accidentes carecen de los medios económicos para responder. *Morales v. Lizarríbar*, 100 D.P.R. 717, 729-731 (1972). A ello responde el diseño de circunscribir el alcance de la Ley a la persona que en contacto físico e inmediato con un vehículo de motor sufre daño, bien al entrar o salir del mismo, mientras viaja o permanece en el automóvil o al ser atropellado por el vehículo. Cualquier interpretación de las definiciones, alcance y cubierta de la Ley tiene que partir necesariamente, pues, cuando menos de algún contacto físico entre la persona que sufre el daño y un vehículo de motor. Véase *Coira Luquis v. De Jesús Rosas, supra*.

El caso de *Urrutia v. Autoridad de Acueductos y Alcantarillados*, 103 D.P.R. 643 (1975), citado por el demandante-recurrente, apoya lo resuelto en Coira Luquis. En ese caso el Tribunal Supremo redujo la compensación de los gastos médicos incurridos en el tratamiento de una mujer que a consecuencia de un accidente se le agravó una condición de conversión histérica que padecía. Los hechos ocurridos en el caso de *Urrutia v. A.A.A.*, aunque similares a los del presente caso ya que en ambos los daños ocasionados ocurren como resultado de la sensación de la víctima de que iba a ser impactada, sin embargo, tienen una diferencia fundamental. En Urrutia, hubo contacto físico entre el vehículo de la conductora y el compresor de la A.A.A. que se desprendió de un remolque que lo conducía. En el presente caso no hubo contacto físico entre el vehículo de la señora Nazario y el *"loader"* o cualesquier otro objeto. La interpretación del estatuto propuesta por el recurrente tampoco está acorde con la realidad. La misma, a juicio nuestro, es impráctica e infundada. Tomamos como ejemplo las personas que presencien desde un vehículo de motor en una vía pública la posibilidad de que otro vehículo de motor les pueda o vaya a impactar. Si adoptamos la tesis del recurrente, en ese caso nada impediría que se concedieran los beneficios de la Ley a las personas afectadas como resultado de su emoción aun cuando no hubiera contacto físico alguno con sus vehículos. No hay duda de que ello traería aumentos considerables en casos de personas solicitando cubierta por la Ley 138 al reclamar beneficios por haber quedado afectadas como resultado de un evento ajeno al espíritu que la motiva. Aunque las leyes de protección social han sido interpretadas en forma liberal, ello no significa que se extiendan sus beneficios para alcanzar situaciones que no están contempladas en el esquema operacional del seguro. Ciertamente, ello puede redundar en el deterioro de la solvencia del programa. *Peña Arán v. A.C.A.A.*, 116 D.P.R. 606 (1985); *Ruiz Firpo v. A.C.A.A.*, 109 D.P.R. 1 (1979). Por los fundamentos antes expuestos, se deniega la expedición del recurso de revisión solicitado.

El Juez Segarra Olivero disiente sin opinión escrita.

Lo acuerda el Tribunal y lo certifica la Secretaria General.