EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Martínez Vázquez<br><br>    Recurrente<br><br>            v.<br><br>Administración de Compensación de<br>Accidentes de Automóviles<br><br>    Recurrido | Certiorari<br><br>2002 TSPR 72<br><br>156 DPR _____ |

Número del Caso: CC-2000-1037


Fecha: 28/mayo/2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI


Juez Ponente:
                    Hon. Ismael Colón Birriel



Abogados de la Parte Peticionaria:
                        Lcdo. Tomás Ortiz Morales
                        Lcdo. Jesús M. Jiménez


Abogado de la Parte Recurrida:
                        Lcdo. Rafael Alén González

Materia: Servicios Médicos

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Martínez Vázquez

    Recurrente

        vs.                         CC-2000-1037    CERTIORARI

Administración de Compensación
de Accidentes de Automóviles

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor REBOLLO LOPEZ

San Juan, Puerto Rico, a 28 de mayo de 2002

El 22 de julio de 1981, José Martínez Vázquez, aquí recurrente, sufrió un accidente en su lugar de trabajo el cual le provocó daños en su miembro viril. Recibió, originalmente, atención médica en la Corporación del Fondo del Seguro del Estado (F.S.E.). Luego de ciertos incidentes legales, Martínez Vázquez logró que el F.S.E. le costeara los gastos médicos y quirúrgicos en que incurrió fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico. Particularmente, fue atendido en Norfolk, Virginia, Estados Unidos de Norteamérica. En dicho lugar, el aquí recurrente

fue intervenido quirúrgicamente por dos galenos: un especialista en cirugía plástica y microcirugía reconstructiva, y un especialista en urología. Como resultado de la intervención quirúrgica a la cual fue sometido Martínez Vázquez, se le reconstruyó su miembro viril por medio de una prótesis y se logró restituir, parcialmente, las funciones principales de dicho órgano.

Mucho tiempo después, el 28 de marzo de 1998, Martínez Vázquez sufrió un accidente vehicular en Puerto Rico. Como consecuencia del mismo, Martínez Vázquez sufrió quemaduras y dolor en el pecho, síntomas que le fueron provocados por el impacto del "air bag". Además, Martínez Vázquez sufrió una lesión en su miembro viril, como consecuencia de la cual, alegadamente, su función sexual se vio interrumpida por completo.[1]

Habiendo transcurrido siete meses desde la ocurrencia del accidente, Martínez Vázquez logró ser atendido por un fisiatra de la Administración de Compensaciones por Accidentes de Automóviles (A.C.A.A.), quien, luego de efectuarle el correspondiente examen físico, recomendó que Martínez Vázquez fuese atendido por un urólogo. No obstante ello, la A.C.A.A. no acogió la recomendación emitida por el fisiatra; en su lugar, le solicitó una evaluación acompañada por un informe de relación causal entre el accidente ocurrido y el tratamiento sugerido.

---

[1] Sostiene el recurrente que, hasta el momento del accidente vehicular, su órgano sexual estuvo funcionando adecuadamente.

Posteriormente, la A.C.A.A. refirió a Martínez Vázquez, por segunda ocasión, ante otro fisiatra, el cual, luego de efectuar la evaluación de rigor, consignó que: "[h]is real problem is the urologic prothesis he has, that was injured in the accident, as he states".

En vista de que Martínez Vázquez no había logrado ser examinado por un urólogo designado por A.C.A.A., pese a que así fue recomendado por el primer fisiatra que lo auscultó, éste optó por examinarse, por su cuenta, con un facultativo de la Sociedad Urológica de Puerto Rico, quien entendió que, dada la condición urogenital de Martínez Vázquez, éste debía ser atendido lo más pronto posible por el cirujano plástico que originalmente intervino con Martínez en el Estado de Virginia. Esta evaluación médica fue sometida por el recurrente ante la A.C.A.A.; mientras, la condición de su prótesis continuaba empeorando.

Posteriormente, el 17 de noviembre de 1998, Martínez Vázquez recibió notificación de parte de la A.C.A.A., Oficina Regional de Guayama, mediante la cual se le informó que <u>no</u> cualificaba para recibir los servicios médico-hospitalarios relativos a su problema urogenital debido a que las lesiones sufridas por él no lo justificaban. Inconforme, Martínez Vázquez apeló la decisión ante el funcionario correspondiente de dicha entidad.

Luego de varios incidentes, el 17 de febrero de 1999, el Dr. Morales Castañer, <u>Director Médico de la A.C.A.A.</u>, en respuesta a una consulta solicitada por Martínez Vázquez y a

base del informe emitido por el Dr. Edgar Martorell, otro
urólogo al que había sido referido Martínez Vázquez, consignó,
contrario a la decisión emitida por la Oficina Regional, que
el problema de la prótesis peniania que presentaba el
reclamante, en efecto se relacionaba con el accidente
automovilístico que éste había tenido. Nótese que, para la fecha
en que finalmente se encontró que existía relación causal
entre el problema urológico de Martínez Vázquez y el accidente
vehicular, había transcurrido casi un año desde la ocurrencia
del mismo.

No obstante lo anterior, y a pesar de haberse reconocido
la relación causal entre el accidente vehicular de Martínez
Vázquez y su problema urogenital, la A.C.A.A. determinó que lo
procedente era indagar la posibilidad de que un urólogo lo
atendiera en Puerto Rico pues no se podía sufragar el
tratamiento fuera del País.

Celebrada una audiencia a ruego de Martínez Vázquez, el
Director Ejecutivo de la A.C.A.A., Lcdo. Práxedes Pedraza
Santiago, reiteró la antedicha postura. A estos fines, emitió
resolución el 21 de diciembre de 1999[2], en la cual consignó, en
síntesis, que:

> Surge claramente de las secciones de la ley
> [...] que los tratamientos médicos que un
> lesionado puede recibir en virtud de lesiones
> sufridas en Puerto Rico, sólo pueden ofrecerse

---

[2] Cabe mencionar que, en el ínterin, y previo referido de la
A.C.A.A., Martínez Vázquez fue evaluado por los Dres. Martorell
y Rivera Herrera; ambos urólogos coincidieron en que Martínez
Vázquez debía ser reevaluado por los especialistas que lo
intervinieron en el Estado de Virginia.

aquí [...]. La Ley Núm. 138[3], no nos faculta a pagar por tratamiento médico fuera de la jurisdicción de Puerto Rico.

No conforme con dicha determinación, el aquí recurrente interpuso escrito de apelación ante la Junta de Directores de la A.C.A.A.. Así las cosas, mientras los reclamos de Martínez Vázquez seguían su curso administrativo, simultáneamente transcurría el término limitativo dispuesto en la ley orgánica de la A.C.A.A. para brindar tratamiento al lesionado, término máximo de dos años contados a partir de la fecha en que tuvo el accidente vehicular.[4]

El 9 de junio de 2000, la Junta de Directores de la A.C.A.A. confirmó la decisión apelada. Concluyó dicho organismo que:

> la letra de la ley creadora de la Administración de Compensaciones por Accidentes de Automóviles es CLARA: sólo cubre servicios médicos que se presten en Puerto Rico. No hay excepción alguna. De hecho, si la Administración los autorizare estaría incurriendo en un acto ultra-vires, contrario a las facultades que le brinda la ley. Desgraciadamente en éste caso, la ACAA sólo puede hacer lo que hasta ahora ha hecho: brindarle los servicios médicos dentro del Estado Libre Asociado de Puerto Rico.

Insatisfecho, Martínez Vázquez interpuso recurso de revisión ante el Tribunal de Circuito de Apelaciones. Dicho foro denegó la expedición del auto solicitado al entender, en síntesis, que la letra de la ley orgánica de la A.C.A.A., establece, de manera clara y libre de ambigüedades, que una

---

[3] Ley Núm. 138 de 26 de junio de 1968, según enmendada, conocida como Ley de Protección Social por Accidentes de Automóviles, 9 L.P.R.A. § 2051 *et seq.*

persona que resulta lesionada en un accidente de tránsito ocurrido en Puerto Rico sólo puede recibir los servicios médico-hospitalarios que requieran sus lesiones dentro de la jurisdicción del Estado Libre Asociado. Ello así, en vista de que la ley orgánica de la A.C.A.A. no le confiere facultad para cubrir tratamiento médico fuera de Puerto Rico a las personas que resultan lesionadas en este tipo de accidentes por lo cual cualquier acto de la A.C.A.A., fuera del ámbito de acción reconocido en la Ley, sería ultra-vires.

Inconforme con dicha determinación, Martínez Vázquez acudió ante este Tribunal, señalando que erró el Tribunal de Circuito de Apelaciones al:

> ... no revocar la decisión de la Junta de Directores de la Administración de Compensación por Accidentes de Automóviles, al no determinar que los servicios de un cirujano plástico eran necesarios y que podían ser brindados en él [sic] E.L.A.

> ... no revocar la decisión de la Junta de Directores de la Administración de Compensación por Accidentes de Automóviles al no ordenarle el traer a los médicos que atendieron al recurrente en los Estados Unidos de Norteamérica para atenderlo.

> ... no revocar la decisión de la Junta de Directores de la Administración de Compensación por Accidentes de Automóviles al no brindarle al recurrente los servicios médicos-hospitalarios [sic] que se requieren por ley.

> ... no revocar la decisión de la Junta de Directores de la Administración de Compensación por Accidentes de Automóviles por negarse a proveer los servicios médicos-hospitalarios [sic] al Sr. Martínez Vázquez en el Estado de Virginia siendo esta la recomendación de sus facultativos médicos y permitiendo que el recurrente los pagara y la A.C.A.A. y ellos rembolsar los mismos.

---

[4] Véase la Sección 5.5 de la Ley 138, ante.

> ... no revocar la decisión de la Junta de Directores de la Administración de Compensación por Accidentes de Automóviles por negar la atención médica a pesar de saber que los médicos facultados para hacer la operación en Puerto Rico se negaron a efectuarla y [le] refirieron a sus médicos originales.

**Expedimos** el auto solicitado. Estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

El vertiginoso incremento en los accidentes que a diario ocurren en nuestras vías de rodaje así como el correlativo aumento en el número de víctimas involucradas en los mismos constituye y siempre ha constituido un motivo de gran preocupación en nuestra jurisdicción, habiendo la Asamblea Legislativa categorizado el mismo como un verdadero problema social. Animada por la referida problemática, la Asamblea Legislativa creó, mediante la Ley 138, ante, la Administración de Compensaciones por Accidentes de Automóviles. Dicha instrumentalidad pública opera un sistema de seguro compulsorio[5], mediante el cual se le garantiza a un gran número de víctimas de accidentes vehiculares el acceso a servicios médicos y, en determinadas ocasiones, el derecho a una compensación por las lesiones sufridas, sin la necesidad de que el lesionado o la víctima tenga que seguir trámite judicial

---

[5] Como es conocido, el costo de dicho seguro se distribuye entre todos los dueños de vehículos de motor mediante una aportación anual, o prima, que se paga al momento de registrar el vehículo y se renueva anualmente en la misma fecha en que corresponda renovar la licencia y tablilla del vehículo de motor o de arrastre. 9 L.P.R.A. § 2064 (1)y (2).

alguno, toda vez que dicho sistema de compensación no está fundado en el concepto de la negligencia. A.C.A.A. v. Trib. Superior, 101 D.P.R 518 (1973); A.C.A.A. v. Yantín, 103 D.P.R 59 (1974). La letra de la Exposición de Motivos del mencionado estatuto pauta claramente el fin primordial en virtud del cual fue concebido. Al respecto, declara que:

> su propósito fundamental [es] el reducir a un mínimo los trágicos efectos económicos y sociales producidos por los accidentes de tránsito sobre la familia y demás dependientes de sus víctimas. Provee un alivio al cada día más creciente problema de las víctimas de accidentes de tránsito, proporcionando a éstas servicios médicos y un mínimo de ingresos que los libra de quedar en total desamparo y desvalimiento económico... . Ortiz Morales v. A.C.A.A., 116 D.P.R 387 (1985).

De conformidad con el propósito por el cual fue concebido dicho estatuto --el cual, como es de notarse, tiene un fin eminentemente social-- los procesos que en él se incorporan para que la víctima logre la reparación del daño deben ser sencillos y flexibles. A tono con lo anterior, rechazamos, en A.C.A.A. v. Yantín, 103 D.P.R. 59, 64 (1974), una interpretación que la A.C.A.A. había emitido de sus propias disposiciones pues la misma no sólo se abstraía de la sabia norma de hermenéutica que requiere que las disposiciones de un estatuto sean interpretadas en conjunto[6], sino que, peor aún, daba al traste con el fin primordial de la ley, el cual es y siempre ha sido "llenar un vacío de necesidad social". Al descartar lo que en dicha ocasión consideramos como una "interpretación

---

[6] Sales v. Samac Motor Corp., 92 D.P.R 529 (1965).

caprichosa", reafirmamos nuestro deber de imprimirle eficacia y pragmatismo a la ley, en lugar de desvirtuar sus propósitos, permitiendo una aplicación cuyos resultados serían, además de injustos, carentes de base racional alguna.

Asimismo, en <u>Ortiz Morales</u> v. <u>A.C.A.A</u>., ante, a la pág. 390-391 [7] , rechazamos cierta interpretación hecha por la A.C.A.A. de su ley habilitadora so color de no ir en contra de sus propósitos. En dicha ocasión, y en referencia a la razón de ser de la Ley de Protección Social por Accidentes de Automóviles, establecimos que:

> [c]on miras a la consecución de la intención que la inspiró, en su redacción se incorporaron <u>trámites sencillos, y la flexibilidad necesaria para hacer viable la reparación del daño</u>. [...]
> <u>El carácter de protección social de la legislación apoya toda interpretación razonable y balanceada que tienda a beneficiar al tutelado</u>. El Reglamento para implantarla no debe derrotar el espíritu que la inspiró. (Subrayado nuestro.)

En fin, siendo éste un estatuto de carácter reparador, es nuestra misión, al enfrentar controversias como la que hoy nos ocupa, guiarnos por el principio de hermenéutica estatutaria que exige de aquél una interpretación liberal, encaminada a la consecución de los propósitos que lo inspiraron. <u>Ello así, claro está, sin que con dicha labor interpretativa pretendamos ampliar el ámbito de aplicación del estatuto para extenderlo a situaciones no contempladas en el mismo</u>. Véase: <u>Ruiz Firpo</u> v. <u>A.C.A.A</u>., 109 D.P.R. 1 (1979). Es imprescindible, pues, para que una interpretación encuentre cabida en el marco de

protección diseñado en virtud de la Ley de Protección Social por Accidentes de Automóviles, que la misma, además de darle contenido real a los intereses tutelados en el referido cuerpo, sea razonable y balanceada. Ortiz Morales, ante.

II

Es dentro de este marco doctrinal que debemos dilucidar la controversia que plantea el presente recurso: si a un lesionado de accidente vehicular le asiste el derecho de que la A.C.A.A. pague, fuera de la jurisdicción exclusiva del E.L.A., los servicios médicos que su condición razonablemente requiera cuando dichos servicios no se brindan o no están disponibles en Puerto Rico.

La A.C.A.A. sostiene que, si bien es cierto que las leyes de protección social se interpretan liberalmente a favor de sus beneficiarios, según lo resuelto en Ruiz Firpo, no se pueden extender, por vía de interpretación, las protecciones que consagran los seguros públicos para cobijar situaciones no contempladas en la operación de dichos sistemas. En ese sentido, aduce la A.C.A.A. que el texto de la Ley 138, ante, es claro y libre de ambigüedades en tanto que establece que los beneficios médico-hospitalarios a los cuales tenga derecho la víctima de un accidente de automóvil se prestarán sólo en el Estado Libre Asociado de Puerto Rico. En consecuencia, concluye la referida agencia que, ante el lenguaje  claro y sencillo del referido estatuto, éste no debe ser menospreciado bajo el

---

[7] Véase, además, a Peña Arán v. A.C.A.A., 116 D.P.R. 606 (1985).

pretexto de cumplir con su espíritu así como tampoco debe ser interpretado como que provee algo que el legislador no intentó proveer.[8]

En el sentido contrario, aduce, en síntesis, el peticionario Martínez Vázquez, que la Ley 138 adolece de una laguna en tanto en cuanto nada dispone sobre el trámite a seguir por la A.C.A.A. cuando los servicios médico-hospitalarios que requiera la condición de la víctima no están disponibles en la jurisdicción del Estado Libre Asociado de Puerto Rico. En vista de ello, precisa que una interpretación de dicha legislación, unida tanto a su historial legislativo como a las expresiones aplicables de este Tribunal, apuntan a la conclusión de que la Ley 138 reconoce a sus beneficiarios el derecho a recibir los aludidos servicios fuera de la Isla cuando los mismos no están disponibles en nuestra jurisdicción.

## III

Son dos (2) las disposiciones de la Ley de Protección Social por Accidentes de Automóviles que resultan de particular pertinencia, y relevancia, al caso que hoy ocupa nuestra atención. La primera de ellas la encontramos en el Inciso 5 de la Sección 5 de la referida Ley, 9 L.P.R.A. sec. 2054(5). La misma ha sido objeto de diversas enmiendas, esto es, ciertos cambios que resultan necesarios reseñar.

---

[8] Al respecto, cita a: Ferretería Matos v. P.R. Tel. Co., 110 D.P.R 153 (1980) y Caguas Bus Line v. Sierra, 73 D.P.R 743 (1952), entre otros.

Al aprobarse la Ley 138 el <u>texto original</u> de la disposición referente a los beneficios a ser concedidos por la Administración <u>leía</u> de la siguiente manera:

> 5. Beneficios Médico-Hospitalarios:
> La Administración proveerá todos los servicios médicos, de hospitalización, casas de convalescencia [sic], rehabilitación y medicinas que la condición de la víctima requiera, conforme a la reglamentación que al efecto establezca la Administración.

Posteriormente, mediante la Ley Núm. 12 de 30 de octubre de 1975, se enmendó, en términos generales, la Ley 138. De los cambios que sufrió dicho estatuto, por medio de los cuales se pretendió ajustarlo a la experiencia obtenida y convertirlo en un instrumento que facilitara de manera más eficaz la consecución de los fines que inspiraron su aprobación[9], resulta de suma importancia la modificación que hubo de imprimirle el legislador al referido Inciso (5). Luego de enmendarse en 1975, el Inciso en cuestión rezaba, en lo pertinente, de la siguiente manera:

> 5. Beneficios Médico-Hospitalarios:
> La víctima <u>tendrá derecho</u> a recibir los servicios médicos, de hospitalización, casas de convalecencia, rehabilitación y medicinas <u>que su condición, razonablemente, requiera</u> durante el término de dos años subsiguientes al accidente. (Énfasis suplido.)

Nótese cómo, más allá de un "deber" impuesto a la Administración para con el beneficiario, en el antecitado Inciso, si bien se alude al mismo asunto, el tenor del texto es, sin dudas, uno muy distinto: <u>se le reconoce a la víctima</u>

---

[9] Exposición de Motivos de la Ley Núm. 12, ante.

de accidente, de manera expresa e inequívoca, un derecho determinado.

Algunos años después, dicha disposición fue nuevamente objeto de enmienda por virtud de la Ley 54 de 1ro de julio de 1986. Actualmente, dicho Inciso dispone como sigue:

> (5) Beneficios médico-hospitalarios. -La víctima tendrá derecho a recibir los servicios médicos, de hospitalización, casas de convalecencia, rehabilitación y medicinas que su condición razonablemente requiera durante el término de dos (2) años subsiguientes al accidente y que estén disponibles dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico. En los casos de parapléjicos y cuadrapléjicos y en los casos de trauma severo y/o de fracturas múltiples con complicaciones de tal naturaleza que requieran atención médica prolongada, se podrán prestar dichos servicios por un término mayor a dos (2) años según lo disponga la Junta mediante reglamento. (Subrayado nuestro).

Como podemos notar, mediante la enmienda de 1986, se añadió, en el primer párrafo del Inciso (5), justo al final de la primera oración, la frase "y que estén disponibles dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico." Ante los cambios efectuados mediante la enmienda de la Ley 54, nos surge la interrogante de a qué obedeció la inserción de tal frase.

Al respecto, el Informe Conjunto emitido por la Comisión de Transportación y Obras Públicas al Senado de Puerto Rico señala, entre otras cosas, que el objetivo principal del P. de la C. 691 es "confeccionar una Ley que sirva mejor a la ciudadanía para cuya protección se crea"; además, apunta que las enmiendas que mediante el mismo se introducen "contribuyen

a hacer este estatuto uno más eficaz en el propósito primordial que persigue que no es otro que reducir a un mínimo los trágicos efectos económicos y sociales que producen los accidentes de tránsito sobre la familia y demás dependientes de sus víctimas."

Por otro lado, el texto del Memorial Explicativo de la Ley 54 del 1ro de julio de 1986, en el cual se expresa el <u>propósito inherente</u> de la adición de la frase "y que estén disponibles dentro la jurisdicción del Estado Libre Asociado Puerto Rico", <u>resulta ser de cardinal importancia respecto al asunto que nos concierne</u>. Allí se indica lo siguiente:

> .....
> El inciso (5) de la referida Sección 5 establece el derecho de las víctimas a recibir los beneficios médico-hospitalarios que su condición razonablemente requiera. El apartado (5) de la Sección 6 dispone que los servicios médicos y de hospitalización se prestarán sólo en el Estado Libre Asociado de Puerto Rico.
> Se propone enmendar el apartado (5) de la Sección 5 para que además del derecho que tienen las víctimas de recibir servicios médicos de hospitalización, <u>el que dichos servicios estén disponibles en la jurisdicción del Estado Libre Asociado de Puerto Rico exclusivamente, según se dispone en la Sección 6</u>, <u>supra</u>. El propósito que persigue con esta enmienda es <u>evitar</u> lo que ocurrió recientemente, de que un lesionado de accidente de tránsito reclame tener derecho a que A.C.A.A. pague un tratamiento fuera de la jurisdicción exclusiva del E.L.A., el cual no se brinda o no esta disponible aquí en Puerto Rico, y que por tanto, está obligado a salir fuera de la jurisdicción del E.L.A., a recibir el mismo. No es el caso de que teniéndolo aquí el [sic] desee escoger el tratamiento fuera de Puerto Rico, sino que se ve obligado a ello por no existir dicho tratamiento en nuestra jurisdicción.
> Como está la ley se expresa únicamente que la víctima tendrá derecho a todos los servicios médicos que su condición requiera durante el término de dos (2) años. Luego dispone en la Sección 6, <u>supra</u>, que dichos servicios médicos se prestarán sólo en el E.L.A. La pregunta a hacerse es, si el derecho que tienen las víctimas a recibir el tratamiento que su

condición requiera y no se brinda aquí en Puerto Rico, ¿tendrá derecho a recibirlo entonces en lugar donde se brinde? Esta interrogante es la que se trata de corregir al adicionar al apartado (5) de la Sección 5, luego de "accidente", "y que estén disponibles dentro de la jurisdicción del E.L.A.".

Como se desprende del historial legislativo de la referida enmienda, mediante la misma el legislador tuvo la intención de armonizar las disposiciones de la transcrita sección de la Ley con las disposiciones del Inciso 5 de la Sección 6 de la misma, 9 L.P.R.A. sec. 2055(5), la cual, desde su origen, establece que:

(5) Los beneficios de este Capítulo se pagarán solamente por lesiones ocurridas en Puerto Rico, y los servicios médicos y de hospitalización se prestarán sólo en el Estado Libre Asociado de Puerto Rico. (Énfasis suplido.)

No hay duda, en consecuencia, de que los servicios médicos y de hospitalización a los que tiene derecho una persona a quien le cobijan las disposiciones de la Ley de Protección Social por Accidentes de Automóviles son aquellos que exclusivamente son prestados en el Estado Libre Asociado de Puerto Rico. Dicho de otra manera, una persona que se ve involucrada en un accidente de automóviles en nuestra jurisdicción no tiene derecho a que la A.C.A.A. le pague servicios médicos y de hospitalización fuera de Puerto Rico, independientemente del hecho de que dichos servicios no estén disponibles en nuestra Isla. Dicha

interpretación es una acorde no solo con la letra del estatuto sino que con el historial legislativo del mismo.[10]

Somos conscientes de que el propósito de la antes citada Ley 138 es uno eminentemente social y que dicha Ley es una de carácter remedial, que debe ser objeto de una interpretación liberal. Ello, sin embargo, no nos autoriza a ampliar el ámbito de aplicación del estatuto, con el fin de extenderlo a situaciones no contempladas en el mismo, en claro menosprecio de la letra del mismo y de la intención legislativa. Véase: Ruiz Firpo v. A.C.A.A., ante.

La cuestión planteada ––esto es, de si un accidentado a quien le cobijan las disposiciones de la citada Ley 138 tiene derecho a recibir servicios médicos y de hospitalización fuera de Puerto Rico cuando dichos servicios no están disponibles en nuestra Isla–– es de la exclusiva incumbencia y prerrogativa de la Asamblea Legislativa de Puerto Rico, la cual tiene en sus manos la oportunidad de enmendar el estatuto a esos efectos y, de esa manera, hacerle justicia a las personas que se encuentran en esta triste situación.

---

[10] Todas las leyes, aun las claras, requieren interpretación. Al hacerlo, debemos siempre acudir primero al texto de la misma, ya que dicho texto no debe ser menospreciado cuando es claro y libre de ambigüedad. Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14.

Ello no obstante, al interpretar las leyes siempre debemos considerar los propósitos perseguidos por el legislador ya que estamos obligados a darle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley. Irizarry v. Jonhson & Jonhson, res. el 27 de enero de 2000, 2000 T.S.P.R. 15.

En el entretanto, la A.C.A.A. tiene la obligación de realizar todas las gestiones necesarias a los fines de lograr que el peticionario Martínez Vázquez reciba el mejor tratamiento médico disponible en Puerto Rico para la condición que le aqueja; ello independientemente del hecho de que haya transcurrido el término de dos años, desde la fecha del accidente de automóviles, que establece la Sección 5.5 de la Ley 138 de 26 de junio de 1968, ya que el transcurso de dicho período de tiempo es, igualmente, imputable a las acciones de, y actitud asumida por, la A.C.A.A. en el presente caso.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Martínez Vázquez

    Recurrente

       vs.                  CC-2000-1037      CERTIORARI

Administración de Compensación
de Accidentes de Automóviles

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 28 de mayo de 2002

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones. Ello no obstante, se devuelve el caso a la Administración de Compensación por Accidentes de Automóviles para que dicha agencia proceda a realizar todas las gestiones necesarias a los fines de lograr que el peticionario Martínez Vázquez reciba el mejor tratamiento médico disponible en Puerto Rico para la condición que le aqueja; ello independientemente del hecho de que haya transcurrido el término de dos (2) años, desde la fecha del accidente de automóviles, que establece la Sección 5.5 de la Ley 138 de 26 de junio de 1968, ya que el transcurso de dicho período de tiempo es, igualmente, imputable a las acciones de, y actitud asumida por, la Administración de Compensación por Accidentes de Automóviles en el presente caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente.

                               Patricia Otón Olivieri
                           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Martínez Vázquez

    Recurrente

      vs.                      CC-2000-1037     Certiorari

Administración de
Compensación de Accidentes
de Automóviles

    Recurrido

Opinión Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 28 de mayo de 2002.

No disputo la interpretación que hace la mayoría del Tribunal con respecto a lo que dispone la ley orgánica de la A.C.A.A. El texto del inciso 5 de su Sección 6, 9 L.P.R.A. sec. 2055(5), al igual que el citado historial legislativo, parecen claros en cuanto a que la legislación de la A.C.A.A. dispone que solamente se pagará por dicha agencia aquellos servicios médicos y hospitalarios prestados en Puerto Rico. Mi disenso aquí lo motiva una razón que la mayoría del Tribunal no examina en su opinión. En mi criterio, la limitación que surge de la propia ley orgánica referida **no es válida desde el punto de vista constitucional.**

Como bien señala la mayoría en su opinión, la A.C.A.A. fue establecida para paliar las consecuencias de un grave problema social que aflige al país. Su ingente propósito es que las víctimas de los frecuentes accidentes vehiculares que ocurren en la Isla tengan acceso eficaz a tratamiento médico-hospitalario para atender las lesiones sufridas en dichos accidentes. La meta evidente es que la curación de tales lesiones no tenga que depender de la condición económica del lisiado. La propia ley orgánica de la A.C.A.A. reconoce que se trata de un **derecho** de las víctimas. No se necesita una enjundiosa conceptualización para entender que se trata de uno de los derechos humanos de naturaleza socio-económica derivado del **derecho a la vida**, cuyo desarrollo ha ocurrido en épocas recientes, a medida que la conciencia humana ha profundizado sobre el alcance y extensión de los derechos fundamentales de las personas.[11] Es un derecho establecido estatutariamente pero por ello no deja de ser una concreción del fundamental derecho a la vida, que sí es de índole constitucional.

Más aun, se trata de un derecho que la A.C.A.A. protege y hace efectivo mediante un seguro compulsorio que **pagan los propios dueños de vehículos.** No es una dádiva del Estado o un mero beneficio social.

En vista de todo lo anterior, no puede considerarse que es razonable que la A.C.A.A. le provea tratamiento eficaz a las víctimas lesionadas en accidentes vehiculares si el tratamiento está disponible en Puerto Rico pero que niegue tal tratamiento a otras víctimas de tales accidentes si éste no está disponible en la Isla. Tal esquema protege el derecho a la vida de unos lesionados pero le niega protección al derecho a la vida de otros lesionados. Se le niega la protección, por la cual se ha cobrado una prima, precisamente al que más la puede necesitar: aquél que no puede costear los gastos especiales que acarrea tener que viajar fuera de Puerto Rico para recibir una imprescindible atención médica.[12] No creo que el trato dispar entre los dos grupos de lesionados referidos sea razonable, sobre todo en una

---

[11] Véase, Jaime B. Fuster, <u>Derechos Fundamentales y Deberes Cívicos de las Personas</u>, Comisión de Derechos Civiles 2001, págs. 20-22.

jurisdicción en la cual los derechos fundamentales tienen una **factura ancha** y deben concebirse de la forma más amplia posible.

En resumen, pues, para mí el aspecto de la legislación en cuestión que aquí nos concierne está viciado por atentar **<u>contra la igual protección de las leyes</u>**. Se erige una clasificación respecto a un derecho relacionado con el derecho a la vida y por cuya protección el Estado cobra, que no es constitucionalmente sostenible. Como la mayoría del Tribunal ni siquiera discute el asunto, y tácitamente convalida el trato desigual referido, yo disiento.


Jaime B. Fuster Berlingeri
Juez Asociado

---

[12] Quizás no en la situación específica del caso de autos, pero en otras situaciones previsibles tal atención médica puede ser necesaria como cuestión de vida o muerte.