Rivera Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se encuentra sometida ante nuestra consideración un recurso de revisión de decisión administrativa, presentado el 13 de diciembre de 2002, por Paola Della Torres. Mediante el mismo se solicita la revisión de la resolución emitida por el Negociado de Bebidas Alcohólicas y Licencias del Departamento de Hacienda del Estado Libre Asociado de Puerto Rico (en adelante el Negociado), en el caso núm. 32-B-063, Paola Della Torres v. Negociado de Bebidas Alcohólicas, de 8 de octubre de 2002, cuya copia fue archivada en autos el 14 de octubre de 2000. Oportunamente se presentó Reconsideración el 30 de octubre de 2002, sobre la cual la agencia administrativa no actuó dentro del término de quince (15) días que se vencieron el 14 de noviembre de 2002, desde cuando comenzaron a contar los treinta (30) días para presentar este recurso.
Luego de ponderar los escritos presentados por las partes, así como las controversias envueltas en el caso de autos, resolvemos confirmar la resolución recurrida. Veamos.
I
La Sra. Paola Della Torres (en adelante la recurrente), comenzó un proceso ante el Negociado para solicitar a nombre de la Salsa House, un permiso alegadamente limitado para vender bebidas alcohólicas de lunes a viernes, luego de las 5:00 p.m. y los sábados y domingos de 11:30 a.m. en adelante, en su Restaurante Hogar de la Salsa *1087 (en lo sucesivo el Restaurante), ubicado en el edificio "Plaza "20, numero 603, de la calle Hipódromo en Santurce. El permiso, además, condicionaría que las bebidas tuvieran que ser ingeridas dentro del local, que contaría con acondicionador de aire central. Mediante comunicación de 1 de marzo de 2002, el Director del Negociado, Sr. Alberto Prats Rojas, notificó la denegatoria del permiso solicitado.
El Negociado fundamentó dicha denegatoria en que el negocio ubica a una distancia menor de cien (100) metros de un iglesia y de dos escuelas, citando como disposición legal aplicable lo dispuesto en la Ley Núm. 367 de 31 de diciembre de 1999. De dicha comunicación surgía el derecho de la parte afectada a solicitar vista administrativa para exponer los fundamentos de hechos y de derecho en que se base la solicitud de reconsideración.
La aquí recurrente pidió reconsideración de dicha determinación por derecho propio el 26 de marzo de 2002. Argumentó, en síntesis, que el Colegio Episcopal está a una distancia mayor a los cien (100) metros, además de la necesidad de cruzar la avenida y que el horario de las actividades regulares de la iglesia no confluye con el del Restaurante, excepto por una hora en la tarde en los sábados. En cuanto a la escuela llamada Centro Amatti, que opera de lunes a viernes de 6:30 a.m. a 5:00 p.m., institución preescolar para niños de 3 y 4 años de edad, alegó que se trata de niños que, por su edad, no pueden llegar solos hasta el restaurante, pues tendrían que caminar por la acera y cruzar la Avenida Hipódromo. Además, señaló con certeza que por las características del permiso solicitado,-las horas en que se venderían bebidas alcohólicas en el restaurante no coincidirían nunca con las horas en que opera el centro preescolar. Igualmente, sostuvo que el Restaurante solicitó el permiso de bebidas alcohólicas antes de que el centro preescolar obtuviera su permiso de uso. Asimismo, señaló que el restaurante cumple con todos los requisitos del Código de Orden Público de Santurce, que surge de la Ordenanza Municipal Núm. 47 de 1999-2000.
Así las cosas, el 30 de julio de 2002, la recurrente informó al Negociado la contratación de un agrimensor certificado para tomar las medidas de distancia pertinentes. Argumentó la recurrente que los inspectores que habían acudido de parte del negociado no eran agrimensores y que “cada uno de ellos (6 inspectores) han medido de manera diferente y con criterios y resultados distintos”. Alegó que en las situaciones que las medidas eran mayores a los cien (100) metros, los inspectores dejan de medir y no especifican la medida final y que otras ocasiones las medidas varían desde un mínimo de 96.87 metros hasta 108 metros.
Mediante comunicación de 12 de agosto de 2002, se presentó ante la Oficial Examinadora la Certificación de Distancia que emitiera el agrimensor contratado por la recurrente. 
En el informe de dicha certificación se hizo constar lo siguiente:

“1. La distancia desde la entrada principal del establecimiento Salsa House y la Catedral Episcopal San Juan Bautista es de ciento siete punto diecinueve (107.19) metros lineales.

2. La entrada desde la entrada principal del establecimiento Salsa House y la salida de emergencia de la Academia Sagrado Corazón es de ciento seis punto setenta y seis (160.76) metros lineales.

3. La distancia desde la salida de emergencia del establecimiento Salsa House y la Catedral Episcopal San Juan Bautista es de ciento quince punto noventa y cinco (115.95) metros lineales.

4. La distancia desde la salida de emergencia del establecimiento Salsa House y la salida de emergencia de la Academia Sagrado Corazón es de ciento cinco punto ochenta y tres (105.83) metros lineales. ”

Según alega la recurrente, la Resolución recurrida determina que, aunque las medidas tomadas sobrepasan el limite de los cien (100) metros, las mismas no fueron tomadas desde el punto más cercano del local que *1088 ocupa el establecimiento comercial. A esos efectos, la Resolución cita el Artículo 6 del Reglamento 3686 del Departamento de Hacienda para la expedición, denegatoria, suspensión y revocación de licencias de bebidas alcohólicas.
Con fecha de 8 de octubre de 2002 se emitió resolución declarando no ha lugar la querella presentada y confirmando la denegación de 1 de marzo de 2002. Así las cosas, el 14 de octubre de 2002, se archivó en autos y se envió copia de la Resolución a la recurrente. El 30 de octubre de 2002, se presentó Moción de Reconsideración sobre la que no se actúo.
Inconforme con dicho dictamen y por entender que la determinación emitida por el Negociado de Bebidas y Licencias es un abuso de discreción y es contraria a la ley, la parte recurrente presentó recurso de revisión de decisión administrativa señalando que la agencia recurrida incidió en la comisión de los siguiente cuatro (4) errores: (1) que erró la Oficial Examinadora al denegar el permiso solicitado de venta de bebidas alcohólicas sin considerar que se trata de un permiso condicionado al interior de un restaurante cerrado, con aire acondicionado y en un horario en el que no existen escuelas o iglesias en operación en mucho más de 100 metros; (2) que erró la Oficial Examinadora al determinar que le son de aplicación al caso de autos los preceptos del Artículo 6 del Reglamento 3686 a pesar de que dicho reglamento requiere sólo 25 metros de distancia y fue aprobado por virtud de una ley derogada que requería sólo 25 metros de distancia, y contraviene lo dispuesto en la ley vigente; (3) que erró la Oficial Examinadora al determinar que existía alguna escuela o iglesia a una distancia de cien (100) metros cuando se probó mediante una certificación de un agrimensor que había una distancia mayor y cuando todas las mesuras hechas por los agentes del Departamento de Hacienda, que no son agrimensores, arrojaron resultados distintos, cada vez mayores; y (4) que erró la Oficial Examinadora al decidir de forma contraria a la política pública establecida por el Estado Libre asociado de Puerto Rico por virtud de la Ley Núm. 148 de 4 de agosto de 1988, la Ley Núm. 178 de 18 de agosto de 2000 y el programa de la actual administración de revitalización de los cascos urbanos, que incluye Santurce.
II
En su primer señalamiento de error, la recurrente alega, en síntesis, que la licencia para el expendio de bebidas alcohólicas por ésta solicitada, resulta consistente con el objetivo de la Ley Número 367 de 31 de diciembre de 1999, 13 L.P.R.A. sec. 9741 (en adelante la Ley 367), esto toda vez que el permiso solicitado estaba condicionado a que se vendieran bebidas alcohólicas en un restaurante cerrado con aire acondicionado y durante el horario que, en términos generales, no coinciden con el horario escolar o con las horas durante las cuales generalmente se asiste a la iglesia. A esos efectos, la parte recurrente señala en su escrito que al no estar operando ninguna escuela ni Iglesia a las horas en que se estarían vendiendo bebidas alcohólicas queda a salvo la protección contenida en la intención legislativa de que “nuestro niños, adolescentes y jóvenes adultos estén protegidos de actos y actividades que puedan influenciarlos negativamente en su presente y futuro”.
La citada disposición, 13 L.P.R.A. sec. 9741, dispone específicamente que:

“(a) El Secretario no expedirá licencias nuevas a negocios que no estuvieron en la existencia a la fecha de la aprobación de esta ley, de acuerdo con esta parte, a personas que interesen traficar al detalle bebidas alcohólicas desde locales situados a una distancia menor de (100) metros de una escuela pública o privada, o de una iglesia, o centros religiosos, o instalación pública o privada de rehabilitación de adictos a sustancias controladas o alcohol. La distancia de cien (100) metros se considerará radial o lineal, según sea el caso aplicable, y comenzará a contarse desde la cerca, valla o cualquier otro signo de demarcación de la escuela, o iglesia o centros religiosos, o instalación pública o privada de rehabilitación de adictos a sustancias a sustancias controladas o alcohol.

(b) Cualquier persona que interese que se expida una licencia nueva, bajo las disposiciones de esta sección, hará constar en la petición requerida en la see. 9736 de este título, que al momento de radicar la petición, el 
*1089
local que propone para detallar bebidas alcohólicas está o no localizado a una distancia menor de cien (100) metros de una escuela pública o privada, o de una iglesia o centros religiosos, o instalación pública o privada de rehabilitación de adictos a sustancias controladas o alcohol.

(c) Si el peticionario de una licencia nueva declara falsamente que el establecimiento comercial para detallar bebidas alcohólicas no está localizada en una distancia menor que a la antes establecida con relación con una escuela pública o privada, o iglesia o centro religioso o instalación pública o privada de rehabilitación de adictos a sustancias controladas o alcohol, el Secretario no expedirá la licencia, o si ya la hubiese expedido, procederá a revocar la misma, de acuerdo con los poderes que le confiere la see. 8038 de este título, siguiendo los trámites allí señalados. ”

En la medida en que la citada disposición solo contempla el criterio de distancia entre las facilidades escolares y religiosas y los negocios en los que se consumen bebidas alcohólicas, la condición de “horario” reclamada por la recurrente no tiene efecto de eximir al solicitante del requisito de distancia o separación expresamente dispuesto en ley.
De lo anteriormente expuesto, se desprende claramente que la ley prohíbe que se expidan licencias para la venta de bebidas alcohólicas a negocios nuevos que estén ubicados a menos de cien metros de una escuela o iglesia.
Ahora bien, sabido es que cuando la ley es clara, venimos obligados a observar su letra. Comité Pro Permanencia de la Barriada Morales v. Municipio de Caguas, 2002 J.T.S. 144; Municipio de San Juan v. Banco Gubernamental, 140 D.P.R. 873 (1996); Ferretería Matos Inc. v. P.R. Tel. Co., 110 D.P.R. 153 (1980); Caguas Bus Line v. Sierra, Comisionado, 73 D.P.R. 743, 750 (1952).
Por lo anteriormente discutido, concluimos que el primer señalamiento de error no fue cometido.
Por entender que el segundo y tercer señalamiento de error se encuentran íntimamente relacionados, los discutiremos conjuntamente.
La parte recurrente señala, en síntesis, que erró la Oficial Examinadora al descartar la certificación realizada por el agrimensor, contratado por ésta, toda vez que utilizó como fundamento para ello lo dispuesto en el Artículo 6 del Reglamento para la Expedición, Denegatorias, Suspensión y Revocación de licencias de Bebidas Alcohólicas, Reglamento Núm. 3686 de 30 de noviembre de 1998. Reglamento, que fue aprobado al amparo de la facultad reconocida al Secretario de Hacienda por la Ley Número 143 del 30 de junio de 1969. A esos fines, alega la recurrente que dicha ley fue derogada por la Ley 367.
Antes de entrar en la discusión de lo anterior, es preciso recordar que en materia de una legislación posterior, y en ausencia de una cláusula derogatoria expresa, sólo se considerará derogado del estatuto anterior las secciones que sean irreconciliables o inconsistentes con el posterior. Véase, 31 L.P.R.A. sec. 5. Rafael Rosario v. Departamento de la Familia, 2002 J.T.S. 93; Pueblo v. Cortés, 142 D.P.R. 305 (1997).
En cuanto a lo anterior, nada impide que el foro recurrido pueda suplir las lagunas de la nueva ley, en específico en cuanto a los parámetros respecto a los cuales se miden los cien metros de separación o distancia actualmente requeridos por el ordenamiento. Veamos.
El Reglamento 3686, supra, fue aprobado al amparo de la Ley 143. A esos efectos, la Ley 143 fue modificada por la Ley 367 con el propósito de ampliar la distancia de separación entre las instituciones protegidas y los negocios en que se dispensan y consumen bebidas alcohólicas.
*1090 La Exposición de Motivo de la Ley Núm. 143 de 30 de junio de 1969, expone que dicha ley tiene el objetivo de fomentar la industria licorista de Puerto Rico regulando la misma de forma tal que el comercio y expendio de bebidas alcohólicas se autorice condicionando al interés público en la salud, seguridad y tranquilidad del pueblo puertorriqueño. El Artículo 80 provee que: “El Secretario podrá negarse a expedir licencias de acuerdo con esta ley a personas que interesen traficar al detalle bebidas alcohólicas desde locales situados a una distancia menor de veinticinco (25) metros de una escuela pública o privada o una iglesia. ”
Por otra parte, el Reglamento 3686 en su Artículo 6 establece que:

“El Secretario podrá denegar la expedición de una licencia de traficante al detal en bebidas alcohólicas a negocios ubicados a una distancia menor de 25 metros de escuelas o iglesias, siempre que por las circunstancias de cada caso entendiere que la operación de dicho negocio pudiere afectar el ambiente de sosiego o tranquilidad que debe existir para la formación moral y la práctica docente en las escuelas y para la solemnidad de las ceremonias religiosas en los templos. En estos casos, el Secretario procederá de conformidad a la política pública y la reglamentación que se haya adoptado sobre la Zonas Escolares. ”

Para determinar si la distancia correcta entre el establecimiento y la escuela o iglesia, el Agente de Rentas Internas medirá la misma de la manera siguiente:

“1. Si la escuela o iglesia tuviere verja, se medirá en la línea recta desde dicha verja hasta el punto más cercano del local que ocupa el establecimiento comercial.

2. Si la escuela o iglesia no tuviere verja, se medirá en línea recta desde el límite de los terrenos que componen el patio del edificio de la escuela o iglesia hasta el punto más cercano del local que ocupa el establecimiento comercial.

3. Si la escuela o iglesia no tuviere verja ni terrenos que formen patio, la distancia se medirá en línea recta desde el punto más cercano de la pared exterior de la escuela o iglesia hasta el punto más cercano del local que ocupa el establecimiento comercial. ”

En aquellos casos en que no fuere posible tomar las medidas de acuerdo con este procedimiento, el Secretario podrá resolver cada caso de acuerdo con sus méritos.
De lo anterior se desprende que la Ley 367 guarda silencio en cuanto al punto de partida en que se debe tomar las medidas. No obstante, el Reglamento dispone que será “desde el punto más cercano”.
Por tanto, concluimos que el foro recurrido actuó correctamente al excluir las medidas del agrimensor contratado por la recurrente, midió la distancia desde la entrada del establecimiento o desde la salida de emergencia del mismo y no desde el punto más cercano a las facilidades protegidas, que en este caso serían La Academia Sagrado Corazón, la Escuela y La Catedral Episcopal.
En este extremo es menester destacar que en la certificación de distancia sometida por el agrimensor no se consideró la distancia entre el establecimiento y el Centro Preescolar Amatí, el que, conforme con la resolución recurrida, ubica a menos de veintitrés (23) metros del establecimiento.
Por otro lado, a diferencia de lo alegado por la parte recurrente, los centros de educación preescolar se encuentran cobijados bajo la Ley 367, esto, en el Artículo 1 inciso 26, el cual dispone que: “escuela comprende todos los planteles de enseñanza pública o privada, incluyendo las escuelas maternales o preescolares de párvulos, “Kindergarten”, de educación primaria, secundaria, postsecundaria y universidades”.
*1091 Conforme a lo discutido, concluimos que el segundo y tercer error señalados por la parte recurrente, tampoco fueron cometidos.
El cuarto y último error señalado por la parte recurrente alega que la determinación administrativa denegando la licencia para la venta y consumo de alcohol en su establecimiento, resulta contraria a la política pública de rehabilitación del Centro Urbano de Santurce. Por entender que este último señalamiento de error carece de fundamento, no entraremos a discutir el mismo.
Por otro lado, es norma reiteradamente establecida que en materia de revisión judicial se presume la corrección de los dictámenes de las agencias administrativas y merecen el mayor respeto y deferencia, salvo que sean irrazonables o arbitrarias. Aquel que impugne una decisión administrativa, tiene que mostrar que la misma es contraria a derecho. Asimismo, si la parte que las impugna no produce suficiente evidencia para derrotarlas, la decisión administrativa debe prevalecer. Castillo Camacho v. Departamento del Trabajo, 2000 J.T.S. 154, pág. 146; Rivera Concepción v. A.R.P.E., 2000 J.T.S. 155.
No obstante las conclusiones de las agencias administrativas merecen gran deferencia, las mismas pueden ser variadas, modificadas o incluso revocadas, cuando no existe en la totalidad del récord prueba sustancial que las sostenga. Misión Industrial de Puerto Rico, Inc. v. Junta de Planificación, 98 J.T.S. 79, pág. 1160.
III
Por todos los fundamentos anteriormente expuestos, resolvemos expedir el auto y confirmar la resolución recurrida.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 57
1. Véase Apéndice del escrito de revisión, página 8.
2. Véase apéndice del escrito de revisión, páginas 9 a la 26.
3. Véase apéndice del escrito de revisión, página 27.
4. Véase apéndice del escrito de revisión, página 32.